The STATE of Ohio, Appellee,

v.

DANIEL, Appellant.

[Cite as *State v. Daniel* (1994), 97 Ohio App.3d 548.]

Court of Appeals of Ohio,
Franklin County.

93APA08–1132.

Decided Aug. 30, 1994.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Steven L. Taylor,* Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *John W. Keeling,* Assistant Public Defender; *Richard F. Swope,* for appellant.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Christopher N. Daniel, appellant, from the judgment entry and sentence of the Franklin County Court of Common Pleas, wherein the court acknowledged that on July 19, 1993, the jury returned a verdict finding appellant guilty of three counts of rape, in violation of R.C. 2907.02, four counts of gross sexual imposition, in violation of R.C. 2907.05, corruption of a minor, in violation of R.C. 2907.04, and three counts of felonious sexual penetration, in violation of R.C. 2907.12. The jury acquitted appellant on one rape count and appellant was ordered to serve ten to twenty-five years as to Counts 1, 2, 6, 8, 9 and 10 and to serve a two-year determinate sentence as to Counts 3, 4, 5, 11, 12 and 13 at the Ohio Department of Rehabilitation and Correction. The sentences in Counts 1, 2, 6 and 8 were ordered to run consecutive to each other but concurrent to the remaining counts.

Appellant timely filed a notice of appeal with this court and asserts the following assignments of error:

"Assignment of Error Number One

"The trial court erred and abused its discretion in overruling defendant's motion to compel the state to provide a bill of particulars setting forth times, dates and places where acts described in the indictment occurred as well as failing to provide such information pursuant to Rule 16.

"Assignment of Error Number Two

"The trial court erred and abused its discretion in failing to provide defendant with all public records relating to [the] charge[s] which were acquired by the Upper Arlington Police Department prior to defendant's arrest, including without limitation the calendars prepared by [T.A.] and [R.K.], and statements made prior to indictment as required by Section 149.43, Ohio Revised Code.

"Assignment of Error Number Three

"The trial court erred and abused its discretion in overruling defendant's motion for an order to take depositions of victims and other crucial witnesses.

"Assignment of Error Number Four

"The trial court erred and abused its discretion in permitting Linda McKee, Dr. Janus and Father Lane to testify as to facts suggesting victims were telling the truth or their appearance suggested they were victims.

"Assignment of Error Number Five

"The trial court erred and abused its discretion in permitting the use of calendars, Exhibits 20 A, B & C, identified as having been prepared by [T.A.] at the initial complaint, the state having failed to provide it to defense in response to Rule 16, or request for discovery pursuant to Section 149.43, Ohio Revised Code, and the error being compounded by admitting them in evidence and by not sustaining the motion for mistrial.

"Assignment of Error Number Six

"The trial court erred and abused its discretion in not sustaining objection and motion to strike Gabe Smith's testimony that defendant liked girls better than boys [sic, boys better than girls].

"Assignment of Error Number Seven

"The trial court erred and abused its discretion in permitting [R.K.] to testify toincidents [sic] occurring before and outside the scope of the indictment.

"Assignment of Error Number Eight

"The trial court erred and abused its discretion in permitting Dr. Charles Johnson to testify concerning the fact that slight penetration would not leave physical signs and that time might have obliterated evidence of sexual penetration.

"Assignment of Error Number Nine

"The trial court erred and abused its discretion in permitting the testimony of Dr. Mark David Janus, PhD., psychologist, Paulist Priest, for the reason the testimony was irrelevant and highly prejudicial in that it was offered to bolster credibility by explaining victims' conduct.

"Assignment of Error Number Ten

"The trial court erred and abused its discretion in permitting the state to offer evidence of and ultimately admit a video tape, My Private Idaho, [and to] refer to pornographic magazines and condoms, all being irrelevant, and any relevance being outweighed by significant damage.

"Assignment of Error Number Eleven

"The trial court erred and abused its discretion in allowing the prosecution to attempt to impeach defendant-appellant by insinuating he lied about a two-year leave, his full time attendance at U. Arizona and by utilizing Josephineum [*sic*] school records, including hearsay evaluations and evidence concerning his ability with computers, casting doubt as to his character.

"Assignment of Error Number Twelve

"The trial court erred and abused its discretion in allowing rebuttal testimony of Ed Kennedy, John Bucholz, Mary Rita Paskell, John Lorenz, Brenda Pinnell, Father Blase Cupich, William B. Weisner, [R.K.], Olen P. Melaragno and Michael Reeb.

"Assignment of Error Number Thirteen

"The trial court erred and abused its discretion in not granting a mistrial when prosecution failed to produce during trial the tape of [R.K.] after direct testimony or rebuttal, as provided in Rule 16, Ohio Rules of Criminal Procedure.

"Assignment of Error Number Fourteen

"The trial court erred and abused its discretion in not talking to a juror who conversed with state's witness, Father Frank Lane, or in not removing the juror and in not granting a mistrial.

"Assignment of Error Number Fifteen

"The trial court erred in failing to sustain defense objection to criticism of defense and in failing to give a cautionary instruction and further in not sustaining objection to suggestion defendant-appellant must prove his theory of the case.

"Assignment of Error Number Sixteen

"The trial court erred and abused its discretion in imposing maximum sentences and running sentences concurrent to achieve a maximum minimum sentence or [*sic*, of] forty years, such sentence being imposed without presentence report or opportunity of counsel to submit a sentencing memorandum, so the court, as it did not might [*sic*] consider all statutory and legal factors in imposing sentence, [violated] the Fifth, 14th, and 18th Amendments to the Constitution of the United States and Article I, Section 16 of the Ohio Constitution."

The evidence presented by the state as compared to the evidence presented by appellant's defense counsel presented two entirely different explanations concerning the charges brought against appellant. If the evidence presented by the state was to be believed, appellant had, over the course of several months,

sexually abused the two young victims in this case, T.A. and R.K.[1] After gaining their friendship, appellant elicited their help in a project, wherein he told them he was authorized, as part of his preparation for the priesthood, to study the sexual development of adolescent boys. Appellant used his friendship with T.A. and R.K. to gradually introduce them to pornography, acts of touching and masturbation, fellatio and, eventually, anal intercourse. As far as the victims' parents knew, appellant was a friend to their sons and appellant had also helped the victims get part-time work around the condominium complex where appellant lived. The parents generally assumed that their sons were working for appellant when the various offenses took place.

If, on the other hand, appellant's explanation is believed, appellant was an orthodox Catholic who was very devout in his faith and strongly believed in strict adherence to the religious and theological positions taken by the Pope of the Roman Catholic Church. As such, appellant often found himself embroiled in controversies with people who were liberal in their Catholic beliefs. Because appellant was strongly opposed to the use of altar girls at St. Andrew Catholic Church in Upper Arlington, many of the students at St. Andrew, as well as the teachers and parents, were unhappy and angry with appellant. Furthermore, appellant had found pornography in the school and, through his friendship with T.A. and R.K., was close to discovering the source of the pornography. Lastly, appellant describes R.K. as a troubled young boy and told the jury that he had caught R.K. in the act of masturbating. Appellant would have the jury believe that there was a conspiracy against him because of his orthodox Catholic beliefs and the two alleged victims in this case, as part of that conspiracy, came forward and testified as they did because they were angry with appellant.

This court recognizes that the above two paragraphs are extremely brief accounts of the evidence presented by both sides, and this court will discuss the evidence adduced at trial in more detail as it becomes relevant to the particular assignments of error.

In his first assignment of error, appellant argues that the trial court abused its discretion in overruling his motion to compel the state to provide a bill of particulars setting forth times, dates and places where the various acts described in the indictment occurred and in failing to provide such information pursuant to Crim.R. 16.

It is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity. *State v. Barnecut* (1988), 44

---

1. This court will be referring to the victims by initials only throughout this opinion. Therefore, appellant's assignments of error have been modified accordingly.

Ohio App.3d 149, 151, 542 N.E.2d 353, 354–355. In such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period. In *State v. Gingell* (1982), 7 Ohio App.3d 364, 7 OBR 464, 455 N.E.2d 1066, the Hamilton County Court of Appeals held that, if precise times and dates are not essential elements of the offense or offenses charged, omission of specific dates in an indictment or bill of particulars is without prejudice or constitutional consequence, provided that failure to provide times and dates does not materially deprive the defendant of an opportunity to prepare a defense. Furthermore, if a variance occurs between the dates alleged in the indictment or bill of particulars and the evidence adduced at trial, the state or the trial court may amend the indictment to conform to the evidence offered in the state's case-in-chief.

The Ohio Supreme Court set forth the relevant law in *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 551 N.E.2d 1261. The court stated as follows:

"A trial court must consider two questions when a defendant requests specific dates, times or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense. * * *" *Id.* at 239, 551 · N.E.2d at 1262.

On appeal, appellant must show that the prosecution possessed more specific information and that such information was material to a defense theory which he put forth at trial. See *State v. Hensley* (1991), 59 Ohio St.3d 136, 142, 571 N.E.2d 711, 716.

This court has reviewed the indictment and finds that the greatest time frame with which appellant was forced to contend was slightly over two months long regarding Counts 5 and 6, which indicated that from June 15 through August 24, appellant engaged in sexual conduct, specifically fellatio with R.K. However, this court also notes that those two counts were dismissed upon motion of the state and the remaining counts, 7 through 15, were renumbered to reflect sequential order in the indictment.

The greatest time frame remaining concerns Counts 1, 2, 3 and 4, which indicate that from February 1 through March 19, appellant engaged in both sexual contact and anal intercourse with R.K.

Appellant's argument centers around the fact that the victims attempted to indicate on calendars when the various acts took place. Specifically, appellant argues that T.A.'s calendar should have been provided to him, inasmuch as T.A. was able to indicate specifically on which dates certain acts took place. Furthermore, appellant argues that R.K.'s testimony was specific enough that the state

could have and should have provided him with more exact dates as to when the offenses occurred.

This court has reviewed the calendars in question and has reviewed the relevant portions of the testimony provided by both victims. This court finds that, contrary to appellant's assertions, neither victim was able to conclusively indicate on which date the majority of the actions took place. In the present case, we are dealing with a situation wherein different sexual acts were committed against these boys over a three-month time frame. Although both boys testified that their "sessions" with appellant ordinarily occurred on specific days of the week, both boys indicated that at various times they missed their "sessions" with appellant and made them up at a later time.

This court finds that the state could have narrowed the time frame for Count 1 of the indictment, wherein it is alleged that appellant engaged in anal intercourse with R.K. During trial, R.K. stated that the first act of anal intercourse with appellant occurred shortly before he received his membership card to Sawmill Athletic Club. The expiration date on the membership card was February 18, 1993, and R.K. testified that it was a one-year membership.

This court finds that the state did possess more specific information concerning this count. However, inasmuch as appellant admitted having frequent one-on-one contact with R.K. during this time frame, appellant has not demonstrated that a more specific date was material to the presentation of his defense. Likewise, the time frame for Count 2 also could have been narrowed accordingly as reflected above; however, appellant has not shown that he was prejudiced by the dates provided by the state.

Regarding the counts concerning T.A., this court notes that, with the exception of the July 2, 1992 through July 26, 1992 time frame set forth in Counts 6 and 7, the state did provide specific dates concerning each offense. Count 6 alleged that appellant engaged in fellatio with T.A. and Count 7 alleged that appellant engaged in anal intercourse with T.A. Concerning Count 6, T.A. testified that an act of fellatio occurred in July 1992 before July 4, 1992. Therefore, the state did indeed possess more specific information concerning at least this one act of fellatio. However, given the specificity of the dates provided regarding the other allegations, this court does not find that appellant was prejudiced by the failure of the state to provide a more exact date concerning this offense.

Concerning Count 7, this court notes that the jury acquitted appellant of this count apparently because T.A.'s testimony was very vague concerning this offense. Therefore, appellant was not prejudiced by any failure of the state to provide a more specific date.

Given the foregoing, this court finds that the failure of the state to provide more specific dates concerning the above offenses did not materially prejudice appellant.

Appellant's first assignment of error is not well taken and is overruled.

Appellant's second and fifth assignments of error are interrelated and will be addressed together. Appellant argues that the trial court erred and abused its discretion in failing to provide appellant with all public records relating to the charges filed against appellant. Specifically, appellant argues that the trial court abused its discretion in not requiring the Upper Arlington Police Department and/or the prosecutor to turn over the calendars prepared by T.A. and R.K. and statements made by the boys prior to the indictment as required by R.C. 149.43. Furthermore, appellant argues that the calendars should not have been admitted into evidence because they were not provided to appellant in response to either his R.C. 149.43 request or his Crim.R. 16 request.

Initially, this court notes that the trial court made an *in camera* review of the documents in question. Reversal of the factual determinations of the trial court relative to disclosure made during this *in camera* review would be inappropriate absent an abuse of discretion. See *State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 597 N.E.2d 147, and *State ex rel. Clark v. Toledo* (1992), 62 Ohio St.3d 452, 584 N.E.2d 662.

R.C. 149.43 provides, in pertinent part, as follows:

"(A) As used in this section:

"(1) 'Public record' means any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except * * * trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.

" * * * *

"(4) 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney."

One set of documents which appellant sought prior to and during trial contained statements made by T.A. and R.K. to Detective Reeb. Appellant argues that these statements were in the nature of a complaint taken by the Upper Arlington Police Department. After the complaints were taken, the police determined that their investigation would focus on appellant.

■ This court has reviewed the documents at issue containing the statements made by the two victims. After a careful review of those documents, this court concludes that the trial court did not abuse its discretion in finding that they were exempt from disclosure. In the present action, appellant basically sought the state's entire prosecutorial file relative to the criminal case. This court finds that appellant was the sole target of the investigation from its inception and that the records relative thereto constituted trial preparation records. Trial preparation materials include information specifically compiled in reasonable anticipation of a criminal proceeding. In the present case, T.A. was interviewed briefly by a member of the Upper Arlington Police Department at his home. At that time, T.A. simply indicated that there had been sexual touching between himself and the appellant. Thereafter, with the entire focus on appellant and only appellant, T.A. proceeded to the police department, where he provided a detailed statement to Detective Reeb. Those statements were compiled for the sole purpose of initiating the prosecution of appellant and were exempted pursuant to R.C. 149.43(A)(4). Furthermore, the statement taken from R.K., likewise compiled for the sole purpose of initiating the prosecution against appellant, constituted trial preparation records exempt under R.C. 149.43(A)(4). See *State ex rel. Vindicator Printing Co. v. Watkins* (1993), 66 Ohio St.3d 129, 609 N.E.2d 551.

■ This court will now address the calendars prepared by T.A. and R.K. When T.A. was being interviewed by Detective Reeb, he was asked if he could provide dates concerning when the various events with appellant took place. In an effort to assist T.A., Detective Reeb provided him with three blank monthly calendars on which he could indicate when certain activities took place. T.A. complied with Detective Reeb's instructions and noted on the calendar the dates on which he believed certain activities took place. It was clear from the record that T.A. could not be certain of the dates and that the calendars instead more accurately depicted how the actions of appellant escalated over the three-month period in which appellant allegedly sexually molested T.A. The calendar prepared by R.K. has certain notations made on it; however, it was much less detailed than the calendar prepared by T.A.

As this court found concerning the statements taken of the two victims, this court likewise finds that the preparation of these calendars by the victims was done in reasonable anticipation of a criminal prosecution specifically targeted at appellant. There were no other suspects. This court concludes that the calendars were exempt from disclosure pursuant to R.C. 149.43(A)(4).

To the extent that appellant also contends that certain other documents should have been disclosed, this court has reviewed the documents contained within the record on appeal and makes three findings with regard to those materials: (1) certain of those documents are exempt from disclosure pursuant to R.C.

149.43(A)(2)(c) or (4); (2) most of the materials were eventually disclosed to appellant both prior to and during the trial; and (3) this court finds that, in the event that any of those records should have been disclosed to appellant under the Public Records Act, appellant has not shown that he was prejudiced by the prosecutor's failure in the present case to turn over those documents to him.

Based on the foregoing, appellant's second and fifth assignments of error are not well taken and are overruled.

In his third assignment of error, appellant argues that the trial court abused its discretion in overruling his motion for an order to take depositions of the victims and other key witnesses. Appellant argues that, inasmuch as R.C. 2945.50 permits the trial court to allow depositions to be taken of witnesses in a criminal case, in this particular case, the trial court abused its discretion in denying appellant's request to do so.

R.C. 2945.50 provides as follows:

"At any time after an issue of fact is joined upon an indictment, information, or an affidavit, the prosecution or the defendant may apply in writing to the court in which such indictment, information, or affidavit is pending for a commission to take the depositions of any witness. The court or a judge thereof *may* grant such commission and make an order stating in what manner and for what length of time notice shall be given to the prosecution or to the defendant, before such witness shall be examined." (Emphasis added.)

R.C. 2945.50 specifically provides that the court *may* grant the defendant the opportunity to take deposition testimony. The statute does not provide that the defendant has a right to do so. Therefore, appellant would have to show that the trial court abused its discretion in denying his request to take such deposition testimony. An abuse of discretion connotes more than just an error of law. It exists where the court's attitude, evidenced by its decision, was unreasonable, arbitrary or unconscionable. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 360–361, 473 N.E.2d 264, 313–314.

Although appellant strongly argues that, inasmuch as the victims refused to speak to defense investigators prior to the trial, he was basically prevented from gathering any information to prepare his defense. Although it is undisputed that witnesses have the right to refuse to speak to an investigator, appellant argues that the trial court should have forced the witnesses to do so by way of ordering depositions. Appellant tries to argue that the statute provides him with a right to take such depositions.

As this court already indicated, the decision to allow the defense to take deposition testimony is governed by an abuse of discretion standard. Neither in

the transcript nor in his brief has appellant demonstrated in the least that the trial court abused its discretion in refusing to allow him to take deposition testimony of the victims or other witnesses. Inasmuch as appellant is unable to point to any error in the record, this court will not reverse the decision of the trial court to refuse to allow him to take the depositions of the victims or other witnesses prior to trial.

Accordingly, appellant's third assignment of error is not well taken and is overruled.

Appellant's fourth and ninth assignments of error are interrelated and will be addressed together. Appellant argues that the trial court erred in permitting Linda McKee, Dr. Janus and Father Lane to testify concerning facts which suggested that the victims were telling the truth. Linda McKee testified that after T.A. talked with Detective Reeb, he was happy and appeared to be a different child than he had on recent previous occasions. Dr. Janus testified that children are reluctant to discuss sex with an adult. He testified further about the effect of Catholicism on a child's ability to relate such matters to adults. The prosecution elicited the fact that Dr. Janus was a priest and asked him whether or not the fact that R.K. was an overachiever and an honor student would affect his ability to tell someone about these acts. Father Lane testified concerning his observations of T.A. at Sunday mass the day before he was to go to Deer Creek with the appellant as part of his birthday present. Father Lane testified that T.A. was very solemn and quiet and that there appeared to be something wrong with him.

Appellant argues that this testimony was elicited for the sole purpose of suggesting that the victims were telling the truth. Therefore, appellant argues that this court should apply the rationale of the Ohio Supreme Court enunciated in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, wherein the court specifically held that an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. Appellant also directs this court's attention to *State v. Davis* (1989), 64 Ohio App.3d 334, 581 N.E.2d 604, wherein the Preble County Court of Appeals determined that testimony regarding the Child Sexual Abuse Accommodation Syndrome ("CSAAS") is impermissible in those instances wherein the victim/witness is knowledgeable and competent to testify.

In *Boston, supra*, the victim was two and one-half years old and was allegedly sexually abused by her father. In that case, two doctors, one a pediatrician and the other a specialist in child sexual abuse cases, were specifically permitted to testify that they believed the girl had been sexually abused, that she specifically identified her father as the perpetrator and that she was telling the truth. The court specifically found that the statements by the experts that the girl was

telling the truth were inadmissible. The court found, however, that the testimony of the girl's mother concerning statements the girl made to her upon awaking the night after she was allegedly abused and her physical condition were admissible.

 In the present case, the testimony presented by Linda McKee and Father Lane concerned their observations of the demeanor of T.A. the day before he told his mother and the police about the alleged abuse and the day after he told his mother and the police about the alleged abuse. This court does not find anything improper about that kind of testimony. Furthermore, the testimony of Dr. Janus concerned the typical reactions of young people concerning the topics of sex and sexuality. Dr. Janus was qualified by the court as an expert in the area of child psychology and the related field of sexual abuse. He testified that *in general*, children tend to reflect their parents' level of comfort in discussing sexual matters; that they tend not to discuss sexual matters with their parents; that they tend not to discuss their own sexual behavior with their parents; that boys are generally more reluctant than girls to discuss any situation where they might have been sexually victimized; that a strong Catholic background would make discussing a sexual experience prior to marriage more difficult for a child; that children of the relative age of the victims in this case are very conscious about the attitudes and opinions of the people around them and are particularly interested in the approval of their parents, their peers and their family; that children who tend to be achievers have more difficulty in admitting that something is wrong; that when the abuser is one in a position of authority, as they often are, children fear that they will not be believed and that this fact influences their decision to discuss the matter; that if children have had an otherwise good relationship with the abuser, they tend to forgive the abuser for the sexual activity, which is typically a small portion of the relationship; that pornography is often used to introduce children to sexual behavior and to desensitize them; and that it is common for the abuser to give the children gifts.

This court finds that the foregoing testimony elicited from Dr. Janus would be helpful to a jury in determining the facts of this particular case. The statements were told in terms of *generalities* and were not presented as a statement that the victims were telling the truth. The distinctions between evidence concerning a typical child abuse victim and a particular child abuse victim are extremely subtle. See *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795, paragraphs one and two of the syllabus. Therefore, this court finds that the testimony of Dr. Janus did not violate the Ohio Supreme Court's holding in *Boston, supra.*

We now turn to the assertion of appellant that the statements should not have been admitted and that they were prejudicial pursuant to the guidelines set forth

in the *Davis* case, 64 Ohio App.3d 334, 581 N.E.2d 604. In *Davis*, the prosecution was permitted to elicit testimony on behavioral peculiarities which may or may not be exhibited by a sexually abused child. The expert in the *Davis* case was permitted to testify concerning the psychological theory of the CSAAS to identify certain characteristics which frequently appear in child abuse victims. CSAAS assumes the presence of sexual abuse and seeks to explain a child's reaction to it. CSAAS is not used to diagnose or detect sexual abuse. In the *Davis* case, the expert was permitted to testify that falsification by a victim/witness in effect establishes the "truth" of the story. In *Davis*, the alleged victim had told different stories concerning her abuse and the expert testified that doing so was an indication that she was indeed sexually abused.

Turning to the issue raised in the present case, this court again concludes that the evidence presented in the *Davis* case was specific evidence concerning that particular victim and was a direct statement that the victim was telling the truth. In the case before this court at this time, the expert merely testified in general terms concerning children who have been sexually abused. This court finds that Dr. Janus's statements were helpful to the jury and that it was not an abuse of discretion for the trial court to have permitted him to testify as such. Concerning the statements of Mrs. McKee and Father Lane, this court also finds that it was not an abuse of discretion for the trial court to have permitted them to testify as they did.

Accordingly, appellant's fourth and ninth assignments of error are not well taken and are overruled.

In his sixth assignment of error, appellant argues that certain testimony elicited from Gabe Smith should have been stricken from the record and the jury should have been given a cautionary instruction. During cross-examination, the following exchange occurred between defense counsel and the witness, Gabe Smith:

"Q. Okay. Did Mr. Daniel have some sort of problem that caused some controversy in the school because he didn't believe girls should be altar boys?

"A. It was not only that. He favored boys over girls, anybody could tell that.

"Q. Would you please listen to the question and answer the question? The question was simply did he have a problem causing you to believe that altar boys should not be altar girls?

"A. Yes."

After the jury had been recessed for the night, defense counsel made a motion to strike that portion of Smith's testimony where he volunteered that appellant liked boys better than girls and requested that a cautionary instruction be given to the jury regarding that remark. Defense counsel argued that the remark was

unresponsive and inflammatory. The trial court concluded that the comment was not totally unresponsive or inflammatory and overruled the motion.

Regardless of the timing of the objection in this present instance, this court agrees with the trial court's conclusion that the response was not totally unresponsive, nor was it necessarily inflammatory. The question posed to Gabe Smith was whether he was aware of a controversy because appellant did not believe that girls should be altar boys. While it could be stated that a large part of the state's theory in this entire case is that appellant was obviously sexually attracted to boys, appellant's theory all along has been that he was ultraconservative in his Catholicism and that this not only caused him problems within the church and the community, but it also is a characteristic which would make it less likely that he had committed the offenses in question. Given the remainder of the evidence presented at trial, this court cannot say that, but for this comment of Gabe Smith, the outcome of this trial would have been any different.

Accordingly, appellant's sixth assignment of error is not well taken and is overruled.

In his seventh assignment of error, appellant argues that the trial court abused its discretion in permitting R.K. to testify concerning incidents which occurred before the dates alleged in the indictment. Specifically, R.K. testified that the first incident of a sexual nature occurred on a ski trip to Holiday Valley in early 1991. Appellant showed R.K. some pornography and took a bath with him. During the bath, appellant touched R.K.'s penis and buttocks, presumably under the pretense of helping to bathe him. Other bath incidents occurred later in 1991 and in either October or November 1991, appellant told R.K. about the "project" in which he was involved, and thereafter the sexual abuse escalated into masturbation and finally into anal intercourse. The first acts actually charged in the indictment were the acts of anal intercourse which occurred in February 1992.

This court notes that the factual situation presented in the present case is similar to that presented in *State v. Pennington* (July 30, 1991), Franklin App. No. 91AP–13, unreported, 1991 WL 476699, motion for leave to appeal overruled, (1991), 62 Ohio St.3d 1481, 581 N.E.2d 1388. In *Pennington,* the indictment charged the defendant with specific allegations of sexual conduct during certain time periods. The two victims were permitted, however, to testify over objection that they were touched, fondled, and forced to perform sex on other occasions not charged during these periods. This court stated as follows:

" * * * A major question for the jury was: why did the girls not say anything or become upset because of the sexual abuse? The prosecution's theory was that, ever so gradually defendant lovingly touched, then fondled, then embraced them, and so on. He slowly seduced them into violation, rather then mauling them and

prompting an outbreak. \* \* \* This showed how defendant was able to accomplish the acts alleged and his opportunity to do so.". *Id.* at 9.

As in *Pennington,* the jury faced the following question concerning R.K.: Why had he waited so long to report the alleged sexual abuse? The evidence of the acts prior to the indictment were introduced to show the jury that the acts had progressed slowly over time and had become more intense. This court finds that the difference in time did not make these events too remote to be admissible. Remoteness was a factor for the trial court to consider, and this court finds that it was not an abuse of discretion for the trial court to have permitted this testimony. The trial court could have rightly concluded that the seduction of R.K. had been an ongoing one and that its effects on his state of mind were continuing in February 1992.

Accordingly, appellant's seventh assignment of error is not well taken and is overruled.

In his eighth assignment of error, appellant argues that the trial court abused its discretion in permitting Dr. Charles Johnson to testify concerning the fact that slight penetration would not leave physical signs and that time might have obliterated certain evidence of sexual penetration. This court finds that appellant's assignment of error number eight lacks merit.

The physical examinations of both victims did not establish whether or not sexual penetration of either boy's anus had occurred. Dr. Johnson testified concerning the physical characteristics of the anus and the difficulty in determining whether or not lacerations existed because of the very nature of the tissue involved. Dr. Johnson also testified concerning the relative time period in which a laceration or tear of the anus would take to heal so that it would no longer appear traumatized. Dr. Johnson was also permitted to testify concerning the relative size of the average penis and the relative size of stool which the average thirteen-year-old boy would pass during a bowel movement.

Evid.R. 702 provides as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Upon review of the evidence presented, this court finds that the above evidence presented by Dr. Johnson was the kind of specialized knowledge which would assist the trier of fact to understand the evidence and to determine a fact specifically at issue in this case. Therefore, it was not an abuse of discretion for the trial court to have permitted this testimony.

Accordingly, appellant's eighth assignment of error is not well taken and is overruled.

In his tenth assignment of error, appellant argues that the trial court erred and abused its discretion in permitting the state to offer evidence of a videotape entitled "My Private Idaho," which was taped over a video entitled "The Pope in Arizona" and permitting the state to refer to pornographic magazines and condoms. Appellant argues that the introduction of them was irrelevant and that any relevance was outweighed by significant prejudice. This court disagrees.

First, concerning the video, this court finds that it was relevant and admissible. Although neither victim testified that the "My Private Idaho" video was the same video which appellant had shown to them, nevertheless, both victims testified that appellant had shown them pornographic videos. The fact that appellant had *any* such videos in his possession substantiated the testimony of the victims and showed that appellant had access to such materials. Furthermore, inasmuch as Detective Reeb testified that the sexually oriented scenes appearing on the videotape appeared to have been taped off cable television, the video corroborated R.K.'s testimony concerning a phone message which he left indicating that appellant should tape the program on Channel 47 for the purposes of one of their "sessions." In fact, the video contains numerous scenes from an undetermined number of programs and it appears that someone actively changed channels during the taping over of the video. Specifically, the video shows numerous sexually provocative scenes involving mainly male on female sexual relations and some male on male sexual relations. Contrary to appellant's assertions, the taping of these scenes does not appear to have been an accident.

Looking at this evidence under the rules of relevancy, this court finds that the videotape and the magazines constituted relevant evidence and the probative value was not substantially outweighed by the danger of either unfair prejudice or misleading the jury. See Evid.R. 403. Appellant was given the opportunity to explain the presence of these items in his condominium. Appellant stated that the taping of "My Private Idaho" over the video "The Pope in Arizona" was an accident and that he was unaware that he had taped that program over that videotape. Appellant explained that the magazines found in his condominium had been confiscated from the desks of certain students at St. Andrew's school. On the one hand, if appellant was telling the truth and the jury believed him, he successfully explained why those items were found in his possession. However, if the prosecution's theory of the case was believed by the jury, appellant was a troubled young man, holding himself out to the community as something that he was not. The trial court did not abuse its discretion in this regard.

Accordingly, appellant's tenth assignment of error is not well taken and is overruled.

In his eleventh assignment of error, appellant argues that the trial court erred and abused its discretion by allowing the prosecution to impeach appellant concerning his student status at the University of Arizona and by utilizing school records from the Josephinum which cast doubt on his character.

In his twelfth assignment of error, appellant argues that the trial court abused its discretion in allowing certain rebuttal testimony. Appellant put his character directly at issue in the present case. Either the jury was to believe appellant to be the following: a man who was so ultraconservative in his belief of the Catholic faith that he was strongly opposed to the use of girls as altar boys for church services; that he was a man seeking to serve God by becoming a priest; that his setbacks concerning the priesthood were occasioned because his religious beliefs were too conservative compared to the mainstream; that he was a man devoted to helping people, especially young people; that he was the kind of man the young people of the church community sought out for advice, including advice on sexual matters; that he was working to uncover some type of "pornography ring" at the church and he was close to finding out who the perpetrators were; and that he was set up by these two young boys and falsely accused simply because they were offended by his insistence on strict adherence to the religious mandates of the Catholic Church.

The other side of the coin was presented by the state: appellant was a man who had lied to almost everyone about who he really was; appellant was not a full-time student at the University of Arizona; appellant was released from different programs to become a priest because of his personality and the fact that he was found to be "undesirable"; appellant lied about his age, not because he was embarrassed that he had not completed the program to become a priest, but because by presenting himself as a younger man, the young people of the community were more likely to trust him; appellant was interested in the young boys in the community, not because he wanted to help them to lead successful lives, but because he wanted to gain their trust in order to seduce them into believing that they were participating in a program that would help him to become a priest; appellant misused this trust with these young boys and sexually assaulted them on numerous occasions.

Without going into a lengthy discussion as to the evidence in question and the testimony of the various witnesses, this court makes the following findings: with regard to that testimony to which appellant did not object, this court finds that the testimony did not rise to the level of plain error and appellant has not shown that, but for the admission of this evidence, the outcome of his hearing would have been different. Secondly, with regard to that evidence and testimony to

which appellant actually objected, this court finds that the evidence was properly presented either to rebut claims made by the appellant or to show bias on the part of certain witnesses who testified on appellant's behalf. This court finds that the trial court did not abuse its discretion in allowing this evidence.

Accordingly, appellant's eleventh and twelfth assignments of error are not well taken and are overruled.

In his thirteenth assignment of error, appellant argues that the trial court erred and abused its discretion in failing to grant a mistrial when the prosecution was unable to produce a certain tape recording made of a conversation R.K. had with Detective Reeb. R.K. testified as a rebuttal witness concerning a telephone call he received at the Zoofari Golf Course, which he stated was from appellant. Appellant had denied, on direct examination, that he had made any such phone call to R.K. After R.K. testified, the prosecution was unable to find the tape recording that had been made. However, the tape had been played at appellant's bond revocation hearing, and, when the prosecution did locate the tape, it was immediately given to appellant's defense counsel. At that time, the trial court conducted an *in camera* inspection and determined that there were no major inconsistencies and that, inasmuch as defense counsel had heard the tape at a bond revocation hearing several months prior, counsel would have remembered any striking inconsistencies. The trial court found the failure to produce the tape harmless.

This court has reviewed the statements made by R.K. on the tape and has reviewed R.K.'s testimony. Contrary to appellant's assertions, there are no major inconsistencies between the tape recording made and R.K.'s testimony at trial. The trial court did not abuse its discretion.

Accordingly, appellant's thirteenth assignment of error is not well taken and is overruled.

In his fourteenth assignment of error, appellant argues that the trial court abused its discretion in not talking to a juror who had conversed with the state's witness, Father Frank Lane. Appellant argues further that the trial court should have removed the juror and should have granted a mistrial.

Upon being notified that a juror was seen speaking with Father Lane, the trial court asked Father Lane to repeat what the juror had said to him. The following exchange took place:

"The Court: Just tell us what she said.

"Monsignor Lane: Okay. She just came up to me and said I had a good voice. I must be a good preacher. That's all she said. That was the sum total of it. And I just said thank you. And that was the extent of the exchange.

"The Court: Any questions?

"Mr. Swope [defense counsel]: No. I have no questions.

"Mr. Sheeran [assistant prosecutor]: Okay. Thank you.

"The Court: Thank you very much.

"Thereupon, Monsignor Lane left the conference room."

Appellant is correct in stating that there is great concern when a juror is found to have had conversations with a witness. However, those conversations are dangerous where they concern matters affecting the case before the juror. It is true that "juror misconduct" creates a rebuttable presumption of prejudice, see *State v. Taylor* (1991), 73 Ohio App.3d 827, 598 N.E.2d 818; however, the rebuttable presumption can arise only when the conversation with the juror involves substantive matters. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 233–237, 15 OBR 311, 370–375, 473 N.E.2d 264, 321–325 (involving a conversation of the judge with the jury during the penalty phase of a capital case).

The conversation between the juror and Father Lane can only be characterized as "small talk." There simply was no prejudice appearing in the record before this court and this court finds that the trial court did not abuse its discretion in overruling appellant's motion for a mistrial.

Accordingly, appellant's fourteenth assignment of error is not well taken and is overruled.

In his fifteenth assignment of error, appellant argues that the trial court erred in failing to sustain the objection of defense counsel to criticism of the defense given during the state's closing arguments. Appellant also objects to the state's suggestion that appellant must prove his theory of the case.

The following comments were made by the prosecutor:

" * * * And I notice too that it's a little interesting that the defense is so desperate that they have to resort to questioning the dates any way they can with that, what I call the accountant's theory, in order for the defendant to escape—.

" * * *

" * * * The defense has never, ever, ever come up with any kind of explanation as to why these people would make up these charges about the defendant."

Defense counsel objected to both statements and the trial court did not sustain the objection nor did the court give a cautionary instruction after the objection. In *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203, the Ohio Supreme Court made it clear that such comments by counsel are inappropriate. The court stated further that the argument must be considered as a whole to determine the prejudicial effect of the comment. Furthermore, "[t]he conduct of

a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400.

Appellant argues that the statements made by the prosecutor imply that defense counsel did not believe in appellant's case, and that in absolute desperation, they will argue nonsense in order to seek an acquittal. Although this court finds the comments made by the prosecutor to have been inappropriate, this court does not find that they were prejudicial. The comments did not suggest that counsel did not believe appellant and did not imply any opinion that defense counsel did not believe in their client's innocence. Instead, the comments amounted to remarks concerning the weighing of the evidence. There is no doubt that the prosecutor could have made these statements in a more tactful manner; however, they do not rise to the level of prejudicial error given the facts and evidence presented in this case. Therefore, the trial court did not abuse its discretion in overruling the objections of defense counsel.

Accordingly, appellant's fifteenth assignment of error is not well taken and is overruled.

In his sixteenth assignment of error, appellant argues that the trial court erred and abused its discretion in imposing the following sentence without having given counsel the opportunity to present a presentence report or to submit a sentencing memorandum: ten to twenty-five years on Counts 1, 2, 6, 8, 9 and 10 and two years determinate on Counts 3, 4, 5, 11, 12 and 13, with Counts 1, 2, 6 and 8 running consecutive to each other but concurrent to the remaining counts. This court finds that appellant's assigned error is without merit.

A trial court is not required to order a presentence investigation when the defendant is convicted of a nonprobationable offense. See *State v. Cyrus* (1992), 63 Ohio St.3d 164, 586 N.E.2d 94. In the present case, appellant was convicted of six nonprobationable offenses for rape and felonious sexual penetration. R.C. 2951.02(F)(4). Furthermore, appellant has not shown that the trial court abused its discretion in refusing to order a presentence investigation. As this court has stated, appellant's entire case rested on whether or not the jury and the trial court believed that he was the man that he said he was. Evidence of appellant's life, his whole life, was before the jury and was before the trial court. The trial court offered defense counsel the opportunity to make oral comments regarding sentencing and did not abuse its discretion when it declined to delay sentencing so that those matters could be presented in a presentence investigation. Furthermore, there is no right on a defendant's part to submit written memorandum on the subject of sentencing.

Appellant also argues that the sentences were disproportionate to the crimes committed. Under the circumstances of the present case, the forty-year sentence imposed for twelve sexual abuse offenses is not grossly disproportionate and does not violate the constitutional prohibition against cruel and unusual punishment. The trial court did not err and did not abuse its discretion in sentencing appellant as it did.

Accordingly, appellant's sixteenth assignment of error is not well taken and is overruled.

Based on the foregoing, appellant's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth assignments of error are not well taken and are overruled. The judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK and CLOSE, JJ., concur.