This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
On March 3, 2000, the Lorain County Court of Common Pleas found appellant, Robert Franklin Moore, Jr. ("Moore"), guilty of two counts of rape, a violation of R.C. 2907.02(A)(1)(b) and two counts of sexual battery, a violation of R.C. 2907.03(A)(5). Moore appeals his conviction.
 I.
In July 1995, Jeanette Maldonado ("Jeanette") alleged that her stepfather, Moore, was sexually abusing her. Jeanette was thirteen years old. She stated that the abuse occurred twice a week for the past two years. Lorain County Children's Services ("LCCS") and the Lorain Police Department became involved in the abuse investigation. Shortly after disclosing the sexual abuse, Jeanette recanted the allegations.
At the onset of the investigation, Jeanette was diagnosed and treated for gonorrhea. The day after Jeanette's diagnosis of gonorrhea, Moore was diagnosed with urethritis but was treated for urethritis and gonorrhea. Moore, a registered nurse, refused to take a specialized test that would confirm or rule out the diagnosis of gonorrhea. No charges were filed as a result of these allegations.
In 1998, Jeanette left the family home and again alleged that Moore was sexually abusing her. In a taped conversation with agents of LCCS and the Lorain Police Department Jeanette admitted that she did not want to return to her family's house because of the sexual abuse. Jeanette also stated that she did not want to file charges against Moore. Moore was indicted of four counts of rape during 1992-1994, eight counts of sexual battery during 1994-1998 and two specifications to make the finding Moore was a sexual predator.
Moore pleaded not guilty to the charges and his jury trial began on February 10, 2000. The trial court granted Moore's Crim.R. 29 motion for acquittal as to charges seven through twelve. The jury found Moore guilty of two counts of rape during the 1993-1994 time period and two counts of sexual battery during the 1994-1995 time period. The jury acquitted Moore of the two counts of rape for the 1992-1993 time period.
The trial court sentenced Moore to 5 to 25 years for each count of rape and 1 to 1 1/2 years to run concurrently for each count of sexual battery. The court also determined that Moore was a sexually oriented offender. Moore timely appeals his conviction.
 II. Assignment of Error No. 1: THE TRIAL COURT ABUSED [ITS] DISCRETION IN DENYING APPELLANT'S MOTION TO EXCLUDE HEARSAY STATEMENTS MADE BY COMPLAINANT AS SHE HAD A MOTIVE TO FABRICATE AND LIE IN VIOLATION OF EVID.R. 803(1); EVID.R. 803(2); EVID.R. 803(3); EVID.R. 803(4) AND DEFENDANT'S CONSTITUTIONAL RIGHTS OF DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES CONSTITUTION AMENDMENTS FIVE AND FOURTEEN, AND BY THE OHIO CONSTITUTION ARTICLE ONE SECTIONS TWO AND SIXTEEN[.]
Moore's first assignment of error is that the trial court incorrectly received hearsay evidence in the form of Jeanette's medical records and statements Jeanette made to agents of LCCS and the Lorain Police Department on May 19, 1998. Moore argues that such statements did not fall within any recognized exception to the hearsay rule and were, therefore, inadmissible. We disagree.
Hearsay is an out-of-court statement made by a declarant offered to prove the truth of the matter asserted. Evid.R. 801(C). The evidence at issue was introduced to prove that Moore did in fact sexually abuse Jeanette. As such, unless the statements fell within a recognized exception to the hearsay rule, they were not admissible. Evid.R. 802;State v. Carter (1995), 72 Ohio St.3d 545, 549.
The record reflects that Jeanette's statements to agents of LCCS and the Lorain Police Department on May 19, 1998, were admitted into evidence as a joint exhibit. The evidence was limited for the purposes of impeachment and the trial court instructed the jury regarding the limited purpose of the taped conversation. Accordingly we will limit our discussion to the admission of statements contained in Jeanette's medical records.
A statement "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment," is not excluded by the hearsay rule. Evid.R. 803(4). It is not necessary that the individual diagnosing or treating the declarant be a physician. Rule 803(4) has been interpreted as including diagnosis or treatment related not only to physical injuries, but also to psychological injuries. See State v. Chappell (1994), 97 Ohio App.3d 515,530-31.
Jeanette told medical personal that Moore was sexually abusing her. She stated that the sexual abuse had been occurring twice a week for the past two years. Jeanette had remained silent about the abuse because she stated Moore "bribes me with money and gifts." As a result of Jeanette's statements routine laboratory tests were performed and revealed that Jeanette was suffering from gonorrhea and the entire family entered 16 months of family counseling. Jeanette received physical and psychological treatment.
We find that Jeanette's statements to the medical personnel at the hospital fell within Rule 803(4) exception to the hearsay rule. The trial court did not err, therefore, by finding that those statements were admissible. Moore's first assignment of error is overruled.
 III. Assignment of Error No. 2: THE TRIAL COURT ABUSED [ITS] DISCRETION IN DENYING APPELLANT'S MOTION TO EXCLUDE TESTIMONY [sic] DEFENDANT'S MEDICAL RECORDS AND TESTIMONY REGARDING DEFENDANT'S MEDICAL CONDITION IN VIOLATION OF EVID[.]R. 403; O.R.C. 2317.02 AND DEFENDANT'S CONSTITUTIONAL RIGHTS OF DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES CONSTITUTION AMENDMENTS FIVE AND FOURTEEN, AND BY THE OHIO CONSTITUTION ARTICLE ONE SECTIONS TWO AND SIXTEEN[.]
In his second assignment of error, Moore argues that the information contained in his medical records was privileged and as privileged material was prohibited from being used at his trial. We disagree.
In Ohio, the physician-patient privilege and any waiver of that privilege is governed by R.C. 2317.02(B). In re Miller (1992),63 Ohio St.3d 99, 109. Under this statute, a physician is generally precluded from testifying concerning a communication made by the patient to the physician or the physician's advice to the patient. R.C.2317.02(B)(1). However, the privilege does not apply in several circumstances. Relevant to this case, the privilege does not apply "[i]f the patient or the guardian or other legal representative of the patient gives express consent." R.C. 2317.02(B)(1)(a)(i).
Moore asserts that his waiver was limited in time and scope and therefore could not authorize a release of his medical records to the police department. On July 13, 1995 Moore signed a LCCS Authorization for Release of Information form. The form authorized the release of his July 1995 medical records to LCCS. The authorization was for the purpose of the "abuse investigation" and was to expire at the conclusion of the investigation. Pursuant to this authorization, Moore's July 1995 medical records were released to Jeffrey Squires ("Squires") an investigator at LCCS. Accordingly, the medical records became part of his investigation of alleged sexual abuse.
Squires testified that LCCS is required by law to coordinate its investigations with the police department. On this investigation he worked "hand in hand" with Detective Carpentiere. Squires released Moore's medical records to Detective Carpentiere.
We find that the July 13, 1995 authorization was a waiver of Moore's physician-patient privilege. R.C. 2317.02(B)(1)(a)(i); see, also, Statev. Post (1987), 32 Ohio St.3d 380, paragraph one of the syllabus (holding "[a] client's disclosure to a third party of communications made pursuant to the attorney-client privilege breaches the confidentiality underlying the privilege, and constitutes a waiver thereof"). Moore's waiver, a voluntary disclosure to others of his medical records, destroyed his physician-patient privilege. The trial court did not commit error in ruling that Moore's medical records were admissible. The second assignment of error is overruled.
 IV. Assignment of Error No. 3: THE TRIAL COURT ABUSED [ITS] DISCRETION IN DENYING APPELLANT'S MOTION TO EXCLUDE EXPERT TESTIMONY REGARDING SEXUAL VICTIMIZATION AND EXPERT TESTIMONY REGARDING BEHAVIORAL INDICATORS OF SEXUAL ABUSE IN VIOLATION OF EVID.R. 403; EVID.R. 702 AND DEFENDANT'S CONSTITUTIONAL RIGHTS OF DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES CONSTITUTION AMENDMENTS FIVE AND FOURTEEN, AND BY THE OHIO CONSTITUTION ARTICLE ONE SECTIONS TWO AND SIXTEEN[.]
In his third assignment of error, Moore argues that it was error to allow testimony from the State's expert witness, Jane Robertson ("Robertson"). Moore asserts that Robertson was not an expert and because she was not an expert her testimony would not assist the trier of fact. Moore argues Robertson's testimony prejudiced him by enhancing Jeanette's credibility. We disagree.
Evid.R. 702 provides a witness may testify as an expert if her testimony relates to matters beyond the knowledge and experience possessed by lay persons, she is qualified as an expert by virtue of her knowledge, skill, experience, training, or education, and her testimony is based on reliable scientific specialized information. Evid.R. 703 permits an expert to testify regarding an opinion or inference if it is based on facts or data perceived by her or admitted into evidence.
We are to apply an abuse of discretion standard when reviewing a trial court's decision regarding an expert witness's testimony. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or judgment. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion exists where the trial court's decision is unreasonable, arbitrary or unconscionable. Id.
We begin by noting that the record reflects that Robertson is a licensed social worker in the State of Ohio. Her educational background includes a Bachelors degree in social work, a criminal justice degree and a Masters degree. Robertson has been employed at LCCS for over fifteen years and she is currently the manager of the family-based care department. She has testified as an expert in the Lorain County Court of Common Pleas approximately fifteen times.
First, Moore submits that Robertson's testimony should be excluded because it did not assist the trier of fact in any way, as it is already within the common knowledge of the jury that children are trained to obey authority figures, that children often wait an extended period of time before reporting abuse, and that children may feel compelled to recant when a family member is the abuser. Robertson testified about the types of disclosures a sexually abused child might use to reveal their abuse. She specifically reviewed the characteristics a sexually abused child may exhibit according to the Child Sexual Abuse Accommodation Syndrome ("CSAAS").
This Court has previously found that it is usually not within a juror's common knowledge or experience how a child sexual abuse victim might respond, and that expert testimony regarding CSAAS is admissible "since it would aid the jury in determining whether the complained of sexual abuse had occurred." State v. Ramos (July 26, 1995), Lorain App. No. 94CA005934, unreported, at 9. Such testimony has been found to be admissible because "the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused." State v. Boston (1989), 46 Ohio St.3d 108, 128. We find Robertson's testimony regarding child sexual abuse, delayed disclosure, recantation and CSAAS was beyond the common experience of the jurors and aided the jury in determining whether the alleged abuse occurred.
Next, Moore claims that Robertson's testimony improperly bolstered Jeanette's credibility, and was completely unnecessary because Jeanette was no longer a child and therefore was articulate and competent to testify. In Ramos, this Court held that expert testimony regarding sexually abused children is admissible provided the expert does not give an opinion as to whether the victim is being truthful. Ramos, Lorain App. No. 94CA005934, unreported, at 9; see, also, Boston, 46 Ohio St.3d at syllabus. Robertson, who had never counseled Jeanette, did not give an opinion as to whether Jeanette was telling the truth. Robertson merely testified in general terms about child sexual abuse, delayed disclosure, recantation and CSAAS; such testimony does not constitute "bolstering."
Robertson's testimony consisted of specialized knowledge to assist the trier of fact to understand the evidence. See Evid.R. 702. This court has held
 [w]here an expert who has not examined the child victim testifies in general terms concerning children who have been sexually abused, such expert testimony can be helpful to a jury in determining the facts of a particular case without unduly prejudicing a defendant.
Ramos, Lorain App. No. 94CA005934, unreported, at 9.[1] Accordingly, we find that the trial court did not abuse its discretion in admitting Robertson's testimony. Moore's third assignment of error is overruled.
 V. Assignment of Error No. 5: THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ENTERED [JUDGMENT] OF CONVICTION, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Moore asserts that the evidence presented at trial did not establish that he had sexual conduct with Jeanette. When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
The trial court found Moore guilty of two counts of rape in violation of R.C. 2907.02(A)(1)(b), and two counts of sexual battery in violation of R.C. 2907.03(A)(5). R.C. 2907.02(A)(1)(b) states that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender" when "[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C.2907.03(A)(5) states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender" when "[t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis." Sexual conduct is defined as "vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
Jeanette testified as the trial court's witness under Evid.R. 614. Both sides were able to cross-examine Jeanette. At trial, Jeanette testified that she had made false allegations against Moore. Her trial testimony contradicted previous statements including statements Jeanette made to medical personnel in July 1995 and to agents of the police department and LCCS in May 1998. However, Jeanette's testimony also confirmed her previous statements recanting the allegations against Moore.
The State presented Jeanette's July 1995 medical records. The medical records contained Jeanette's allegation that Moore was sexually abusing her and that the abuse had been occurring twice a week for the past two years. Jeanette stated that Moore "bribes me with money and gifts" to remain silent about the abuse. As a result of the hospital's laboratory tests, Jeanette was diagnosed and treated for gonorrhea on July 5, 1995.
Also in evidence were Moore's medical records. He visited the doctor on July 6, 1995 complaining of itching and "pussy drainage." Moore's treating physician, James Ohliger, M.D. ("Dr. Ohliger"), testified that the presumptive diagnosis for a patient who presented with Moore's symptoms was either gonorrhea or chlamydia. The medical records indicate that Moore refused to have a more specific test performed to determine if he was suffering from gonorrhea. Dr. Ohliger was unable to make a diagnosis of gonorrhea without the test and therefore treated Moore for gonorrhea and urethritis. The State's expert witness, Paul Matus M.D. ("Dr. Matus") testified that he could make a diagnosis of gonorrhea from Moore's medical record and symptoms.
Jeffrey Squires ("Squires"), a sex abuse investigator LCCS, testified regarding Jeanette's initial disclosure of the abuse. He stated that Jeanette recanted the allegations shortly after her disclosure. Squires also testified that during the course of the investigation he received medical records from Moore, Jeanette and Daisy Moore ("Daisy"); who is Jeanette's mother and Moore's wife.
The state presented the expert testimony of Robertson to explain the behaviors of sexually abused children including delayed disclosure, recantation and CSAAS. Robertson testified that recantation is a common behavior for a child victim who does not receive support from her family. She also testified that it is common for a child victim to recant if the alleged offender is a family member.
Detective Carpentiere testified that he was involved both the 1995 and 1998 investigations. He testified that no charges were filed as a result of the allegations Jeanette made in 1995. In 1998, he stated that Jeanette was reluctant to cooperate with the police department in pursuing charges that were filed against Moore. After Jeanette recanted in 1998, Detective Carpentiere did admit that he told Jeanette she would serve five years in prison for lying to the grand jury.
The defense presented Cathy Johnson ("Johnson"), Daisy and Moore. Johnson counseled the family for 16 months after the July 1995 allegations. The main purpose of the counseling session was to reunite the family, which eventually occurred in August 1996. She testified that the case was closed, meaning that all parties involved had addressed the case plan issues and that involvement by LCCS was no longer warranted.
Daisy testified that she had been married to Moore for fifteen years. She stated that after the 1995 allegations, she was tested and did not have gonorrhea. The test results confirmed her belief in Moore's innocence because the couple enjoyed an active sex life and she would have been infected if Moore in fact had gonorrhea. During the investigations she did not discuss the allegations with Jeanette or attempt to influence Jeanette. Daisy testified that Jeanette had lied to her on several previous occasions.
Moore took the stand in his own defense. He stated that he was a registered nurse. He testified that he sought medical treatment on July 6, 1995 for a urinary tract infection. Moore denied making the statement that he was suffering from "pussy drainage" and insists that the intake person wrote the statement describing a symptom that he did not have. He refused the specific test for gonorrhea because of the pain involved in gathering the culture for the test and for financial reasons.
Moore testified that he would never hurt a child. However, on cross-examination he admitted to pulling Jeanette's hair, kicking her in the stomach and slapping her on July 2, 1995. He was upset that Jeanette, a 13 year old, had been seen driving around with a 20 year old man. On another evening in 1997, Moore was upset with a driver on the highway, confronted the driver and was eventually convicted of felonious assault as a result of this confrontation. He also testified that he recently co-signed with Daisy on the lease of Jeanette's new car.
We find that the jury did not lose its way in resolving the conflicting testimony presented by Jeanette, Moore and the other witnesses. Evidence was presented that established the elements of rape and sexual battery. We cannot say that the jury lost its way in convicting Moore. The evidence does not weigh heavily in Moore's favor, and the conviction is not against the manifest weight of the evidence. The fifth assignment of error is overruled.
 VI. Assignment of Error No. 4: THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN VIOLATION OF CRIMINAL RULE 29 [,] ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE CONSTITUTION OF THE UNITED STATES WHEN IT DENIED [APPELLANT'S] MOTIONS FOR ACQUITTAL.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the denial of a motion for acquittal, this court must construe the evidence in a light most favorable to the state. State v. Messer (1995), 107 Ohio App.3d 51,54. A motion for judgment of acquittal is properly denied "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Gasser (1993), 89 Ohio App.3d 544, 547, quoting State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
Having already found the conviction was supported by the manifest weight of the evidence we find that there was sufficient evidence to support Moore's conviction. The trial court did not err by denying Moore's motion for acquittal. The fourth assignment of error is overruled.
Having overruled all five assignments of error we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
BATCHELDER, P. J., WHITMORE, J., CONCUR
[1] Accord State v. Daniel (1994), 97 Ohio App.3d 548, 562-64.