OPINION
Defendant-appellant, David Jackson, appeals from a judgment of the Franklin County Court of Common Pleas, whereby appellant was convicted of two counts of rape, in violation of R.C. 2907.02.
Appellant was originally indicted on six counts of rape and tried before a jury that was unable to reach a unanimous decision. In October 1999, appellant's case was brought before another jury. The second case involved three counts of rape. Under count one, appellant was charged with forcing Yolanda Garnett to engage in fellatio on August 10, 1997. Under count two, appellant was charged with having forced Yolanda to submit to cunnilingus sometime from December 1, 1996 through March 31, 1997. Under count three, appellant was charged with forcing Yolanda to submit to cunnilingus sometime from May 1, 1997 through July 1, 1997.
The record establishes that appellant was previously Yolanda's stepfather. Yolanda testified that she met appellant when she was twelve years old and he was dating her mother, Aretha Garnett, at the time. Having previously lived with her grandmother, Yolanda began living with her mother at 1507 Kenmore when she was thirteen years old, along with appellant, his son, and Yolanda's sister, Monica. Appellant's daughter, Desiree Jackson, would sometimes come and stay with them.
Yolanda recalled an incident when she was twelve years old and standing on a sofa at her mother's home. According to Yolanda, appellant "came by and grabbed me on my butt, like grabbed me, rubbing on my butt and told me to get down." Yolanda told her mother about the incident, and her mother told Yolanda that she threw appellant out of the house. However, Yolanda recalled moving into her mother's house at age thirteen and finding appellant still living at the house.
After living on Kenmore, the group moved to an address on Oaklawn. This time, Desiree was living in the residence full time. Yolanda testified that, while living at the Oaklawn address, appellant made Yolanda watch him take a shower.
At age sixteen, Yolanda and the others moved to 3275 Stockholm. Yolanda indicated that, when she and her family moved to Stockholm, appellant started "messing" with her more. Yolanda testified that appellant would make her watch pornographic videos with him while he masturbated. As well, Yolanda described appellant raping her sometime between December 1996 and the spring of 1997. According to Yolanda, appellant grabbed her while she was in the hallway at home and told her, "[d]o you know that you're my girlfriend and your mom is my wife?" Appellant also stated, "[y]ou're the only one for me and nobody else is going to have you." Appellant pulled Yolanda down on the floor in the hallway. She testified that she was initially unable to struggle because appellant had all his weight on her. Next, according to Yolanda, appellant started licking her chest and stomach and proceeded to perform cunnilingus. Yolanda indicated that the cunnilingus did not last long because she was ultimately able to "struggle him off" of her. Yolanda described being scared and crying during this encounter. She also stated that she did not tell her mother about the incident because "when I told her when I was 13 and everything she didn't do anything then, so I didn't figure she would do anything now."
After the sexual encounter, Yolanda moved in with a friend. However, the friend's mother did not want to get involved in Yolanda's family problems and Yolanda was asked to move back home.
Yolanda testified that, in June or July 1997, appellant again forced her to submit to cunnilingus. Yolanda indicated that the sexual abuse occurred in the same manner as the previous sexual encounter described above. In the summer of 1997, Yolanda told Desiree about the rapes and decided to move in with another friend. However, Yolanda moved back home at the urging of her friend.
According to Yolanda, appellant subsequently forced her into another sexual encounter on August 10, 1997. On that date, appellant approached Yolanda while she was playing video games in the living room. Appellant stated, "[c]ome here for a second." Yolanda asked "why?" and appellant repeated his command. After Yolanda refused, appellant grabbed her, lifted her up and moved her near a chair. Yolanda struggled to break free, but appellant would not let go of her. Next, according to Yolanda, appellant forced Yolanda on her knees and said, "I want you to do something for me." Yolanda then testified that appellant forced her head and mouth over his penis and made her perform fellatio.
Aretha testified, too, and indicated that, on August 20, 1997, Yolanda told her about being raped by appellant. Aretha phoned appellant and asked him if he was "messing" with Yolanda. Appellant replied, "It didn't happen like that, it didn't happen like that." Aretha told him that it should not have happened at all and hung up the phone.
Aretha testified that she then called the police, but before the police arrived, appellant called back. According to Aretha, appellant told her, "[d]on't do this to me. Let me explain. Don't do this to me, baby. It shouldn't have happened." Aretha indicated that she hung up on him again.
According to Aretha, appellant called back another time asking to speak to Yolanda. However, the police had arrived and told Yolanda not to talk to appellant. Aretha also testified that, when Yolanda was talking to the police, she was crying.
Aretha stated that appellant talked to her several times about her dropping the charges. Appellant told Aretha that, if she did not drop the charges, people at her job would talk about her and Yolanda, by calling Yolanda a "slut" and Aretha a "bad mother."
During another conversation, appellant told Aretha that the only reason he and Yolanda did anything was because Aretha was never at home. According to Aretha, appellant told her that the events did not happen the way Yolanda described them and that "he took it, she gave it to him and she was willing to have sex with him." Aretha testified that the conversation ended with appellant saying he would tell her how many orgasms Yolanda had.
Plaintiff-appellee, the state of Ohio, also called Desiree Jackson as a witness. Desiree testified that she told Aretha that appellant was "touching" Yolanda, but claimed she had merely created that story in an effort to leave the house. Desiree said that she repeated her lie to the police. According to Desiree, she and Yolanda discussed fabricating the story.
As noted above, the jury found appellant guilty of count one regarding the forced fellatio in August 1997, and count two regarding the forced cunnilingus occurring between December 1, 1996 and March 31, 1997. However, the jury acquitted appellant of count three regarding the forced cunnilingus occurring between May 1, 1997 through July 1997. The trial court sentenced appellant and, after a sexual predator hearing, found appellant to be a sexual predator.
Appellant appeals, raising twenty-two assignments of error:
 FIRST ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by failing to adequately instruct the jury, prior to the opening statements being given, about the burden of proof and presumption of innocence thereby misleading the jury in its function as the trier of fact.
 SECOND ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by permitting the State of Ohio to introduce evidence of sexual innuendo without context, and notwithstanding the provisions of Ohio Rule of Evidence 403(A) and the statutory provisions under Ohio Revised Code 2907.02(D), which unfairly prejudiced Defendant's/Appellant's interests to a fair trial.
 THIRD ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by the issuance of an order prohibiting Appellant's counsel from properly denominating the source of impeachment evidence as from a prior trial to effectively mislead the jury as to the factual events of this case.
 FOURTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by providing a prosecution witness, that is, the purported prosecuting victim Yolanda Garnett, with a paraphrase answer in response to a cross-examination question which improperly aided the witness' credibility in a case that turned squarely on the credibility of the prosecuting witnesses.
 FIFTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by interfering with Appellant's counsel's cross-examination of Yolanda Garnett and examining her in the presence of the jury relating to a key issue of credibility, that is, the theory that the allegations are patterned after an incident related to Yolanda Garnett by her mother, to the prejudice of Appellant.
 SIXTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by reversing its prior decision relating to an area of inquiry relating to the credibility of Yolanda Garnett and her testimony.
 SEVENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in permitting the State of Ohio to elicit a self-serving second redirect series of questions on matter that the witness had already confessed that she had no specific recollection about.
 EIGHTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by permitting the introduction of inadmissible hearsay over Appellant's objection in violation of Ohio Rule of Evidence 802.
 NINTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion by permitting the introduction of inadmissible hearsay over Appellant's objection in violation of Ohio Rule of Evidence 801 and relieved the State of Ohio of its burden to argue whether the matter was definitionally excepted under the hearsay rule, pursuant to Ohio Rule of Evidence 801(D)(2), or excepted under a hearsay exception under Ohio Rule of Evidence 803.
 TENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in overruling Appellant's motion for Acquittal at the conclusion of the State's case-in-chief.
 ELEVENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in limiting the scope of Appellant's closing argument.
 TWELFTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in modifying the jury instruction pertaining to the definition of sexual conduct.
 THIRTEENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in ignoring the doctrine of jury nullification in its charge and recitation of instructions to the jury.
 FOURTEENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in its charge and instructions to the jury by relieving the State of Ohio of its two constituent parts of the burden of proof, that is, the burden of production and the burden of persuasion.
 FIFTEENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion during the jury instruction phase of the trial by misleading the jury into believing that the jury must select among the six verdict form and that there needs to be a unanimous decision from this jury to the Appellant's prejudice because the trial court ignores the possibility that a jury may be hopelessly deadlocked as was the case in the initial trial of the Appellant.
 SIXTEENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion during the jury instruction phase of the trial by failing to include an instruction relating to Appellant's constitutional right not to testify in a criminal case matter.
 SEVENTEENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in overruling Appellant's post-trial motion for acquittal.
 EIGHTEENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in overruling Appellant's post-trial motion for a new trial.
 NINTEENTH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in finding Appellant a sexual predator based upon a conclusion of purported "multiple" victims of rape arising out of a sustained motion in limine hearing.
 TWENTIETH ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in finding and labeling Appellant a sexual predator.
 TWENTY-FIRST ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in sentencing appellant to consecutive terms under the facts and circumstances of this case.
 TWENTY-SECOND ASSIGNMENT OF ERROR: The trial court erred and abused its discretion in failing to declare a mistrial on the basis of prosecutorial misconduct in calling a witness to testify in its case-in-chief that the State previously identified as someone who would not tell the truth, namely, Desiree Jackson.
We begin with appellant's fourteenth assignment of error where appellant contends that the trial court relieved appellee of its burden of production and burden of persuasion when it provided the following instruction:
 [Appellant] is presumed innocent unless guilt is established beyond a reasonable doubt. [Appellant] must be acquitted — acquitted means found not guilty — of an offense unless the state produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense.
We disagree with appellant's contentions. The above instruction addresses both appellee's burden of production and burden of persuasion. The instruction refers to the burden of production by mentioning appellant's presumption of innocence and indicating that appellee must produce evidence to overcome the presumption. The instruction also addresses appellee's burden of persuasion by indicating that appellant's guilt must be established beyond a reasonable doubt and by stating that appellee must convince the jury beyond a reasonable doubt of every essential element of the offense. Additionally, the trial court provided other instructions pertinent to appellee's burden of persuasion by defining the reasonable doubt standard and repeatedly stating that the jury could not find appellant guilty of a particular offense unless his guilt was established beyond a reasonable doubt.
Accordingly, we conclude that the trial court did not relieve appellee of its burdens of production and persuasion and overrule his fourteenth assignment of error.
Appellant's first assignment of error concerns the trial court's preliminary instructions given prior to opening statements. The instructions provided the jury with a brief discussion on trial procedure and what constitutes evidence. Appellant contends that the trial court was also required to provide preliminary instructions on appellee's burden of proof and appellant's presumption of innocence. We disagree.
We are to review jury instructions in context of the overall charge and not in "artificial isolation." State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus. In this case, the record establishes that the trial court informed the jury that its preliminary instructions were not its final instructions on pertinent law and issues. As well, the trial court cautioned the jury that the giving of "some of the instructions now and some at the conclusion of the case has absolutely no significance as to their relative importance, nor does the order in which I give the instructions." The trial court also stated:
 If during these instructions and the instructions which I will give you at the conclusion of the evidence any principle or idea is repeated or stated in varying ways, no emphasis thereon is intended and none must be inferred by you. You must not single out any particular sentence or individual point or instruction and ignore all the others. Rather, you are to consider all of the evidence, instructions as a whole, and you are to consider each instruction in relation to all of the other instructions.
When the trial court gave its final instructions before the jury deliberated, it provided an instruction on appellee's burden of proof and appellant's presumption of innocence. As noted above, the instructions adequately informed the jury of the beyond reasonable doubt standard and we find no error in the trial court providing them at the end of the trial rather than at the beginning. Accordingly, we overrule appellant's first assignment of error.
Appellant's second assignment of error concerns Yolanda's testimony about the incident when she was twelve years old and standing on a sofa at her mother's home. Yolanda testified that appellant "came by and grabbed me on my butt, like grabbed me, rubbing on my butt and told me to get down." Appellant contends that the trial court erred in allowing such testimony regarding appellant rubbing and grabbing Yolanda's buttocks. We disagree.
Appellant bases his claim, in part, on R.C. 2907.02(D), Ohio's "rape shield" law. The "rape shield" law allows testimony on specific instances of a defendant's "sexual activity" with the victim if the testimony is "material to a fact at issue in this case" and its probative value outweighs its inflammatory or prejudicial nature. R.C. 2907.02(D). Nonetheless, appellant contends that the "rape shield" law precludes the above testimony because the incident involves an innocuous act of discipline and not "sexual activity" between appellant and Yolanda.
The touching of another's buttocks constitutes "sexual activity" if the contact is made for purpose of sexual arousal or gratification. See R.C.2907.01(B) and (C). We have previously recognized that the term "sexual arousal or gratification" contemplates touching that a reasonable person would perceive as sexually stimulating or gratifying. State v. Astley
(1987), 36 Ohio App.3d 247, 250.
In this case, a reasonable person could perceive that appellant engaged in the above contact for sexual arousal or gratification. The contact involved appellant grabbing and rubbing Yolanda's buttocks, activity reasonably associated with sexual arousal or gratification.
Indeed, the Ohio Supreme Court concluded that a defendant touching a child's buttocks under the pretense of a backrub constituted sexual contact made for purposes of sexual stimulation. State v. Schaim (1992),65 Ohio St.3d 51, 57. Similarly, here we may properly conclude that appellant grabbed and rubbed Yolanda's buttocks for sexual stimulation under the pretense of disciplining her.
Appellant further contends that the "rape shield" law precludes Yolanda's testimony because it is highly prejudicial and inflammatory and has little probative value. However, Yolanda's testimony about appellant rubbing and grabbing her buttocks is highly probative and pertinent to this case. The testimony is relevant towards explaining why Yolanda did not report being raped by appellant until August 1997. As noted above, immediately after appellant grabbed and rubbed Yolanda's buttocks, she told her mother about the incident. However, Yolanda believed that her mother did not resolve the situation. Yolanda recalled that her mother stated that she threw appellant out of the house because of the buttocks grabbing and rubbing incident, but, when Yolanda moved in at age thirteen, appellant was still living at the house. Thus, Yolanda testified that, for a long time, she did not think her mother would do anything about appellant raping her.
We have previously recognized that, when a victim is subjected to prolonged, escalating sexual abuse, a jury may question why the victim did not immediately report early instances of the abuse. State v. Daniel
(1994), 97 Ohio App.3d 548, 565-566, citing State v. Pennington (July 30, 1991), Franklin App. No. 91AP-13, unreported. Thus, we concluded that appellee may introduce evidence regarding the genesis of the sexual abuse in order to explain why the victim did not immediately report the indicted offense. Daniel, at 565-566.
The probative value of Yolanda's testimony outweighs its alleged inflammatory or prejudicial nature. The testimony concerned a relatively tame incident, in comparison to the several incidents of rape, was not excessively repeated throughout the trial and did not constitute a central theme of appellee's case.
Appellant also contends that Yolanda's testimony about appellant rubbing and grabbing her buttocks is inadmissible under Evid.R. 403(A), which requires a trial court to exclude relevant evidence if its probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury." However, for the reasons noted in our discussion on the "rape shield" law, we conclude that the probative value of the buttocks rubbing and grabbing testimony outweighs any "danger of unfair prejudice, confusion of the issues, or misleading the jury."
Accordingly, we conclude that the trial court did not err in allowing Yolanda to testify about appellant rubbing and grabbing her buttocks. As such, we overrule appellant's second assignment of error.
Appellant's third assignment of error concerns the trial court having both parties refer to the first trial as a "prior hearing" when impeaching witnesses with their testimonies from the first trial. Appellant contends that the trial court's decision misled the jury and hindered his trial counsel's ability to impeach witnesses. We disagree.
The trial court's decision did not hinder the parties' ability to impeach witnesses. The decision neither restricted the use of the witnesses' prior testimonies nor precluded the parties from demonstrating that the prior statements were made under oath.
As well, we find nothing in the record establishing appellant's bare assertion that the jury was misled by the trial court's decision to have the parties refer to the first trial as a "prior hearing." Any impeachment would be established by showing a prior statement was made under oath, not that the statement was made at a "trial" instead of a "hearing."
Thus, we find nothing erroneous or prejudicial about the trial court's decision to have the parties refer to the first trial as a "prior hearing." Accordingly, we overrule appellant's third assignment of error.
Appellant's fourth assignment of error relates to a question asked by the trial court during the cross-examination of Yolanda. Appellant's trial counsel cross-examined Yolanda about the position of her body during a sexual encounter with appellant that culminated in cunnilingus. At one point during the cross-examination, Yolanda described the positioning of her arms during the initial stages of the sexual encounter. Thereafter, appellant's trial counsel began using the word "vertical" to describe the positioning of Yolanda's arms. The trial court then asked Yolanda a question:
 [TRIAL COURT]: Miss Garnett, are you indicating at the point where he grabs your hand you're backwards, so although as you're sitting you're putting your hands up, but really, you're laying down, is that what you're saying?
[YOLANDA]: That's what I was trying to.
Appellant contends that the trial court erroneously aided Yolanda's testimony and credibility through the above exchange. We disagree.
Trial courts may question witnesses in an impartial manner to develop facts germane to an issue to be decided by the jury. Evid.R. 614(B);State v. Davis (1992), 79 Ohio App.3d 450, 453-454. Here, the record demonstrates that the trial court asked the above question to develop Yolanda's testimony about the positioning of her arms during a sexual encounter with appellant. The trial court indicated that the testimony needed to be developed because appellant's trial counsel's questions did not accurately depict Yolanda's testimony. Moreover, the trial court asked the question in an impartial manner and even instructed the jury to disregard anything it perceived as indicating the trial court's partiality.
Accordingly, we conclude that the trial court did not err when it asked Yolanda the above question about the positioning of her arms during a sexual encounter with appellant. Therefore, we overrule appellant's fourth assignment of error.
Appellant's fifth and sixth assignments of error relate to appellant's trial counsel seeking to inquire into a conversation Yolanda had with Aretha, where Aretha revealed being raped by an uncle. Appellant's trial counsel wanted to demonstrate that Yolanda's rape accusations were influenced by her discussion with Aretha. Originally, the trial court indicated that it would allow such inquiry during the cross-examination of Yolanda. However, the trial court later decided to determine the relevancy of the inquiry and asked Yolanda about when Aretha talked to her about being raped by an uncle. Yolanda stated that she did not have the discussion with Aretha until after she talked to the police. The court reversed its ruling saying that the conversation was not relevant unless the discussion occurred before Yolanda talked to the police. The trial court mentioned that Yolanda could be recalled if Aretha were to testify differently on the timing issue. Aretha testified that her conversation with Yolanda occurred after the allegations against appellant "came out." Appellant now contends that the trial court erred in asking Yolanda about when Aretha revealed being raped and in not allowing his trial counsel to inquire into Yolanda's conversation with Aretha about Aretha being raped. We disagree.
Decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. O'Brien v. Angley (1980), 63 Ohio St.2d 159,163. An abuse of discretion constitutes more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, it entails an action of the trial court that is unreasonable, arbitrary or unconscionable. Id. Here, the trial court correctly concluded that Aretha's above conversation with Yolanda is irrelevant. As noted above, the discussion occurred after Yolanda announced her accusations against appellant. As well, Aretha testified that she did not provide any details of her own experience. Thus, appellant's trial counsel would not have demonstrated that Yolanda's accusations were influenced by her conversation with Aretha. Accordingly, we conclude that the trial court did not abuse its discretion in prohibiting appellant's trial counsel from inquiring about the above conversation.
We further conclude that the trial court did not err in asking Yolanda about the timing of her discussion with Aretha. As we previously stated in this opinion, trial courts may question witnesses in an impartial matter to develop facts germane to the trier of fact. See Evid.R. 614(B); Davis, at 453-454. Here, the trial court asked Yolanda questions in an impartial manner to ensure that the jury only received relevant material.
Accordingly, we overrule appellant's fifth and sixth assignments of error.
Appellant's seventh assignment of error concerns appellee's re-direct examination of Yolanda. On direct examination, Yolanda testified that appellant raped her about every other weekend between July 1996 and May 1997. On cross-examination, Yolanda indicated that she was unable to provide details of the numerous times she was raped by appellant. Appellant's trial counsel attacked Yolanda's memory of the alleged rapes and ultimately suggested that the allegations were false. The trial court allowed appellee to ask questions on re-direct examination. On re-direct, appellee sought clarification on the extent of her memory on the alleged rapes. Appellant contends that the trial court erred in allowing such questions on re-direct because Yolanda previously testified to not being able to give details of the rapes. We disagree.
"The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof." State v. Wilson (1972),30 Ohio St.2d 199, 204. In this case, the trial court did not abuse its discretion in allowing appellee to ask Yolanda the above questions on re-direct. As noted above, during the cross-examination of Yolanda, appellant's trial counsel attacked the victim's credibility and memory concerning the above rape allegations. Appellee was entitled to provide Yolanda with an opportunity to clarify the extent of her memory and the trial court had authority to provide such an opportunity.
Therefore, we conclude that the trial court did not err in allowing appellee to ask Yolanda questions on re-direct examination concerning the extent of her memory on the above rape allegations. As such, we overrule appellant's seventh assignment of error.
Appellant's eighth assignment of error relates to Aretha testifying about particular out-of-court statements. First, appellant complains about Aretha testifying as to what Yolanda told her when Yolanda first reported the rapes to her. Appellant claims that the testimony constitutes hearsay and that the trial court committed reversible error in admitting the testimony over his objections. We disagree.
Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In this case, the statements attributed to Yolanda convey out-of-court statements offered for their truth and, thus, constitute inadmissible hearsay. See Evid.R. 802.
Accordingly, we conclude that the trial court erred in admitting the hearsay evidence. However, we must determine whether the trial court's error constitutes harmless error. See State v. Kidder (1987),32 Ohio St.3d 279, 284; State v. Sorrels (1991), 71 Ohio App.3d 162,165. If the evidence in favor of conviction, absent the hearsay, is so overwhelming, we may properly conclude beyond a reasonable doubt that the trial court's error is harmless. Kidder, at 284. A conviction will not be reversed if the trial court's error is harmless. State v. Brown (1992),65 Ohio St.3d 483, 485.
In this case, the record contains overwhelming, credible evidence in favor of appellant's convictions. As noted below, Yolanda's testimony clearly establishes that appellant raped her by forcing her to submit to cunnilingus and to perform fellatio. Yolanda further explained that she twice moved out of her home because of the unwanted sexual encounters. Accordingly, we conclude that the trial court's error in admitting the above inadmissible hearsay constitutes harmless error.
Next, appellant contends that the trial court committed reversible error in allowing Aretha to testify as to what Desiree told her about appellant "messing" with Yolanda. We disagree.
Initially, we conclude that the above statements attributed to Desiree consist of out-of-court statements offered for their truth and, thus, constitute hearsay. See Evid.R. 801(C). However, appellant did not object at trial to the admission of the statements. Therefore, appellant waived the error on appeal. State v. Moreland (1990), 50 Ohio St.3d 58, 62. Accordingly, we may not recognize the error unless it constitutes plain error. Id. We cannot find plain error unless we find that, but for the error, the outcome of the trial would clearly have been different. Id., citing State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus; State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. The plain error rule is to be invoked only in exceptional circumstances to avoid a clear miscarriage of justice. Long, at paragraph three of the syllabus.
In this case, the record does not establish that appellant clearly would have been acquitted of all charges but for the claimed error. As noted below, the record contains extensive, credible evidence in support of appellant's convictions. Thus, appellant's claimed error does not rise to the level of plain error.
Appellant further claims that the trial court erred in admitting Aretha's testimony on questions she posed to appellant about the rape allegations. Appellant asserts that Aretha's questions constitute hearsay. We disagree.
Generally, questions do not constitute hearsay. State v. Carter
(1995), 72 Ohio St.3d 545, paragraph two of the syllabus. Questions are incapable of being proved either true or false and cannot be offered "to prove the truth of the matter asserted." Id. Thus, Aretha's testimony on questions posed to appellant does not constitute hearsay and the trial court did not err in allowing the testimony.
Appellant also contends that the trial court erred in admitting Aretha's out-of-court statement made to appellant, "It shouldn't have happened at all." Appellant argues that the statement constitutes hearsay. We disagree.
As noted above, hearsay consists of assertions offered "to prove the truth of the matter asserted." Evid.R. 801(C). According to the Ohio Supreme Court, "[a]n `assertion' for hearsay purposes `simply means tosay that something is so, e.g., that an event happened or that a condition existed.'" [Emphasis sic.] Carter, at 549. In this case, Aretha's statement, "It shouldn't have happened at all," does not state that an event happened or that a condition existed; rather, the statement consists of Aretha's personal opinion on matters in this case. Thus, Aretha's statement is not an assertion and does not constitute hearsay.
Nonetheless, because the statement consists of Aretha's personal opinion on this case, the statement has no bearing on the case and is not relevant evidence. See Evid.R. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") Evidence that is not relevant is not admissible. Evid.R. 402. Therefore, Aretha's statement constitutes inadmissible irrelevant evidence.
However, because appellant did not object at trial to Aretha's statement, we review the issue under the plain error standard. SeeMoreland, at 62. Here, Aretha's brief and vague statement was not excessively repeated throughout the trial. Thus, the statement did not pervade the trial and taint the jury. Moreover, as demonstrated below, the record contains extensive, credible evidence in support of appellant's convictions. Thus, we conclude that no plain error exists surrounding the admission of Aretha's statement. Accordingly, based on the above, we overrule appellant's eighth assignment of error.
In his ninth assignment of error, appellant asserts that the trial court improperly permitted testimony relating statements he made to Aretha. Over an objection by appellant's trial counsel, the trial court allowed Aretha to testify that appellant responded to the rape allegations by stating, "[i]t didn't happen like that, it didn't happen like that." Appellant contends that the statements are inadmissible hearsay. We disagree.
Under Evid.R. 801(D)(2), an out-of-court statement is admissible if it is a statement made by a party of a case and is offered against him or her at trial. "The statement need not be against the interest of the declarant at the time made." In re Coy (1993), 67 Ohio St.3d 215, 218
(citing Staff Note to Evid.R. 801[D][2]). Thus, the above statements offered against appellant, a party to this case, do not constitute inadmissible hearsay. Accordingly, we conclude that the trial court did not err in allowing the testimony.
Appellant also suggests that the trial court damaged the credibility of appellant and his trial counsel when it overruled the objection to the above statements by stating, "[o]verruled unless I'm missing something you can approach and enlighten me." We disagree.
The trial court's comments were neither inflammatory nor inappropriate. The trial court's statements can be reasonably interpreted as a need for more information before being able to sustain the objection. Moreover, even if members of the jury interpreted the statements as adverse to appellant and his trial counsel, the trial court eliminated such prejudice by admonishing the jury not to perceive the trial court's remarks as a reflection on its feelings toward the case. Therefore, based on the above, we overrule appellant's ninth assignment of error.
In his tenth assignment of error, appellant contends that the trial court erred in overruling his motion for acquittal on count three, which was raised at the conclusion of appellee's case-in-chief. Despite the trial court's ruling on count three, the jury ultimately acquitted appellant on the count. Thus, appellant cannot show prejudicial error. Therefore, we overrule appellant's tenth assignment of error.
Appellant's eleventh assignment of error concerns the following admonition the trial court gave to appellant's trial counsel:
 * * * [B]ased on what you said to the jury in voir dire about you will wait and hear the state case and you will decide whether to bring evidence based upon the relative strengths of the case, there was no objection at that point. Probably it wasn't objectionable, but there will be no argument on your part about you deciding the case was so weak that you did not decide you needed to present evidence because I believe that would be a comment of your personal opinion concerning the evidence, which is not proper. So there won't be any argument along those lines.
Appellant asserts that the above admonition constitutes reversible error because it prejudicially limited the scope of his trial counsel's closing statement. We disagree.
Appellant's trial counsel registered no objection to the admonition and never indicated that he wanted to make the argument subject to the admonition. Furthermore, we are unable to determine whether the admonition had any practical effect on appellant's trial counsel's ability to make a closing statement because closing arguments have not been transcribed. The Ohio Supreme Court has held that, "[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199.
Accordingly, we overrule appellant's eleventh assignment of error.
Appellant's twelfth assignment of error concerns the trial court's jury instruction that "[s]exual conduct means, among other things, fellatio and cunnilingus between persons, regardless of sex." Appellant notes that the definition of sexual conduct in R.C. 2907.01(A) includes vaginal and anal intercourse, and asserts that the trial court was required to include these sexual acts in its definition of sexual conduct. We disagree.
Before instructing the jury on the definition of sexual conduct, the trial court indicated its desire to limit the definition to fellatio and cunnilingus. The trial court noted that the statutory definition also included vaginal and anal intercourse, but concluded that it was not necessary to include the two types of intercourse because there was no evidence in the record regarding appellant engaging in such acts with Yolanda. Appellant's trial counsel expressed his agreement with this decision, stating, "I haven't got a problem with the changes you wanted to make on that definition because I think it's appropriate."
Appellant has no basis to now complain about the trial court's decision to omit vaginal and anal intercourse from its instruction on sexual conduct. A trial court is not required to give jury instructions that are immaterial. Bostic v. Connor (1988), 37 Ohio St.3d 144, paragraph two of the syllabus. Thus, the Ohio Supreme Court previously held that a trial court did not err in giving a jury instruction that omitted particular elements of a statutory definition because the elements had no relevance to the case. State v. Joy (1995), 74 Ohio St.3d 178, 181.
Here, as the trial court recognized, there was no evidence in the record regarding appellant engaging in vaginal or anal intercourse with Yolanda. Furthermore, the three rape charges submitted to the jury for deliberation did not allege appellant having vaginal or anal intercourse with Yolanda. Thus, the trial court did not err in omitting vaginal and anal intercourse from its instruction on sexual conduct. Therefore, we overrule appellant's twelfth assignment of error.
In his thirteenth assignment of error, appellant contends that the trial court erred in not providing a jury instruction on the doctrine of jury nullification. We disagree.
The prevailing view in the United States is that the jury need not be notified of its nullification power. State v. Gribble (Oct. 23, 1987), Tuscarawas App. No. 87AP020016, unreported. Thus, courts have uniformly held that a trial court is not required to provide an instruction on jury nullification. United States v. Trujillo (C.A.11, 1983), 714 F.2d 102,105. Indeed, other appellate courts in Ohio have recognized that a trial court is not required to inform the jury about jury nullification. Statev. Mark (May 24, 1988), Jefferson App. No. 87-J-19, unreported; Gribble;State v. Culmer (Aug. 22, 1984), Lorain App. No. C.A. 3604, unreported;State v. Floyd (Oct. 19, 1981), Miami App. No. 81 CA 18, unreported.
While we recognize that a jury may render a verdict at odds with the evidence or the law, we agree with the courts noted above that a trial court is not required to inform the jury about jury nullification. Such information would convey an implied approval of jury nullification and run the risk of "degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well as tyranny." United States v. Dougherty (D.C. Cir. 1972), 473 F.2d 1113,1137. Accordingly, we conclude that the trial court did not err when it provided no jury instruction on the doctrine of jury nullification. As such, we overrule appellant's thirteenth assignment of error.
In his fifteenth assignment of error, appellant asserts that the trial court misled the jury into believing that it was required to return a verdict and ignored the possibility that a jury may be deadlocked and unable to come to a unanimous decision. We disagree.
Nowhere in the jury instructions do we find language compelling the jury to return a verdict. Rather, the trial court told the jury to adhere to their honest views of the case, no matter what the opinions expressed by other jurors. Specifically, the trial court stated:
 Consult with one another, consider each other's views, and deliberate with the objective of reaching an agreement if you can do so without disturbing your individual judgment.
 Each of you must decide this case for yourself, but you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion if you're convinced that it's wrong. However, you should not surrender honest convictions in order to be congenial or to reach a verdict solely because of the opinion of the other jurors.
Accordingly, we overrule appellant's fifteenth assignment of error.
In his sixteenth assignment of error, appellant contends that the trial court committed reversible error in failing to instruct the jury on a defendant's right not to testify in a criminal case. We disagree.
When giving its final oral instructions to the jury, the trial court failed to give an instruction on a defendant's right not to testify. After the jury began deliberations, the trial court noticed its failure to provide the instruction and allowed appellant's trial counsel to suggest a way to correct the omission. Appellant's counsel did not want the instruction read in open court. Rather, counsel asked the trial court to include the instruction when the trial court sent its instructions to the jury in written form.
The record indicates that, before the close of evidence and before the jury began their deliberations, appellant had neither requested a jury instruction on his right not to testify nor objected to the absence of such an instruction. Thus, appellant waived any error pertaining to the jury instruction, absent plain error. Crim.R. 30(A); State v. Stallings
(2000), 89 Ohio St.3d 280, 292.
Here, there is no indication in the record that the jury held appellant's silence against him. As noted above, the jury ultimately received the instruction and is presumed to have followed the instruction. See Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus; Frowine v. Hubbard (Feb. 15, 2000), Franklin App. No. 99AP-496, unreported. Moreover, as we previously indicated in this opinion, the trial court instructed the jury to consider the instructions "as a whole" and to "consider each instruction in relation to all of the other instructions."
Therefore, the outcome of appellant's trial was not affected by the trial court's failure to provide an oral instruction on a defendant's right not to testify. As such, appellant's claimed error does not rise to the level of plain error, and we overrule appellant's sixteenth assignment of error.
In his seventeenth assignment of error, appellant contends that the trial court erred in overruling his post-verdict motion for acquittal. We disagree.
The standard for a post-verdict motion for acquittal is the same as a motion for acquittal at the conclusion of appellee's case-in-chief,i.e., sufficiency of the evidence. State ex rel. Yates v. Court ofAppeals for Montgomery Cty. (1987), 32 Ohio St.3d 30, 32-33. The evidence is sufficient to sustain a conviction if "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23, quoting the syllabus ofState v. Bridgeman (1978), 55 Ohio St.2d 261. In ruling on a motion for acquittal, the court must construe all evidence in a light most favorable to the prosecution. State v. Evans (1992), 63 Ohio St.3d 231, 248. In reviewing a trial court's decision to deny a motion for acquittal, "our analysis of the evidence focuses not upon its weight or credibility, which are ordinarily matters for the jury, but rather its quantitative sufficiency to establish beyond a reasonable doubt each element of the offense." State v. Kline (1983), 11 Ohio App.3d 208, 213.
In this case, we conclude that the record contains sufficient evidence in support of appellant's conviction of rape stemming from the fellatio Yolanda performed on appellant on August 10, 1997. R.C. 2907.02(A)(2) defines rape and states that no person shall engage in sexual conduct with another by purposely compelling the other to submit by force or threat of force. Here, the record establishes that appellant forced Yolanda to perform the above-noted fellatio. After Yolanda refused appellant's order to move towards him, he picked her up and moved her near a chair. Yolanda tried to struggle away, but appellant would not let go of her. He proceeded to place her on her knees and put her head and mouth over his penis so she could perform fellatio.
The record also contains sufficient evidence in support of appellant's conviction of rape based on cunnilingus. Yolanda testified that, sometime between December 1996 and the early spring of 1997, appellant approached her in the hallway stating, "[d]o you know that you're my girlfriend and your mom is my wife?" Appellant also told Yolanda, "[y]ou're the only one for me and nobody else is going to have you." He then grabbed Yolanda and pulled her down onto the floor. Appellant had his weight on her so she could not struggle free. Yolanda testified that appellant proceeded to pull up her shirt, lick her stomach and perform cunnilingus until she was able to "struggle him off" of her.
In reviewing appellant's rape convictions, we further recognize that Yolanda explained that she twice moved out of her home because of the forced sexual encounters. Accordingly, we conclude that the trial court did not err in overruling appellant's post-verdict motion for acquittal.
In his brief, appellant also appears to claim that appellant's convictions are against the manifest weight of the evidence. However, appellant does not raise the manifest weight challenge in any assignment of error. Thus, the issue has not been properly raised on appeal. SeeState v. Carroll (Oct. 17, 2000), Franklin App. No. 00AP-219, unreported. Nonetheless, in the interests of justice, we will address appellant's manifest weight argument.
In determining whether a verdict is against the manifest weight of the evidence, we act as a "thirteenth juror." State v. Thompkins (1997),78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. (quoting State v. Martin [1983],20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence is one reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387.
Here, appellant provides various arguments on why his convictions are against the manifest weight of the evidence. Primarily, appellant contends that Yolanda's testimony is not credible. In making this assertion, appellant claims that, on cross-examination, Yolanda provided testimony on a particular cunnilingus incident that actually portrayed her body as being in a position that made such a sexual act impossible. However, we are unable to discern any physical impossibility from the cross-examination. Indeed, we recognize that, during the cross-examination, appellant's trial counsel asked questions that did not accurately depict Yolanda's testimony on the position of her body during the sexual encounter. Accordingly, the jury was not required to reach the conclusion sought by appellant's trial counsel and we have no basis to second-guess the jury's judgment on the issue.
Appellant further attacks Yolanda's credibility because she did not immediately report the rapes. However, Yolanda's failure to immediately report the rapes has no substantial connection towards her credibility and ability to testify about the rapes. As noted above, Yolanda indicated that she did not immediately report the rapes because she did not think anybody would do anything about the situation. Yolanda came to this conclusion after her mother failed to do anything after she was informed of appellant previously rubbing and grabbing Yolanda's buttocks. Yolanda's attitude also stemmed from appellant telling the teenaged victim that nobody would believe her if she reported the sexual abuse. Accordingly, the jury did not have reason to discount Yolanda's testimony just because she failed to immediately report the sexual abuse.
Appellant also contends that Yolanda's testimony is not credible because she was unable to provide exact dates of the rapes. However, Yolanda provided sufficient information on when the charged rapes occurred and was able to describe the details of those sexual encounters subject to appellant's convictions. Thus, nothing in the record establishes that Yolanda's testimony is otherwise incredible or faulty because she failed to provide exact dates on all the alleged rapes.
We further reject appellant's contention that Yolanda's testimony is incredible because her version of events was not corroborated by witnesses. Nothing in the record establishes that the jury was required to discount Yolanda's testimony just because the testimony was not corroborated by other witnesses. Indeed, there is no requirement that a rape victim's testimony be corroborated. State v. Love (1988),49 Ohio App.3d 88, 91.
Accordingly, we conclude that the jury did not act unreasonably in accepting Yolanda's testimony and conclude that appellant's convictions are not against the manifest weight of the evidence. Therefore, based on the above, we overrule appellant's seventeenth assignment of error.
In his eighteenth assignment of error, appellant contends that the trial court erred in overruling his post-trial motion for new trial. We disagree.
Crim.R. 33(A) governs motions for new trials and states:
 A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 (3) Accident or surprise which ordinary prudence could not have guarded against;
 (4) That the verdict is not sustained by sufficient evidence or is contrary to law. * * *;
(5) Error of law occurring at the trial;
 (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial.
* * *
However, a trial court shall not grant a motion for a new trial unless it affirmatively appears from the record that the defendant was prevented from having a fair trial or was prejudiced by the cause providing the basis of the motion. Crim.R. 33(E)(5). Furthermore, a trial court's decision on a motion for a new trial will not be disturbed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71,76.
Here, appellant contends that the trial court abused its discretion in not granting his motion for a new trial because the jury heard inconsistent and insufficient evidence in support of his convictions. However, as noted above, appellant's convictions are supported by sufficient evidence and the jury was not required to discount as incredible the evidence supporting the convictions.
Appellant further argues that the trial court was required to grant his motion for a new trial because the jury did not receive an oral instruction on a defendant's right not to testify in a criminal case. However, as noted above, the jury ultimately received the instruction and the record fails to establish that the jury otherwise held appellant's silence against him. Thus, we conclude that the trial court did not abuse its discretion in overruling appellant's motion for a new trial. As such, we overrule appellant's eighteenth assignment of error.
In his nineteenth and twentieth assignments of error, appellant asserts that the record does not support the trial court's decision finding him to be a sexual predator. We disagree.
A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E). The issue in a sexual predator hearing is whether the state has proved by clear and convincing evidence that the defendant is likely to engage in future sexually oriented offenses. R.C. 2950.09(B)(3); Statev. Cook (1998), 83 Ohio St.3d 404, 408. Clear and convincing evidence is evidence that provides the trier of fact with a firm belief of the facts sought to be established. Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122. R.C. 2950.09(B)(2) requires the trial court to take into consideration "all relevant factors" in making a sexual predator determination, including various factors enumerated in the statute.
In finding appellant to be a sexual predator, the trial court relied in part on information it received in a motion in limine, which was granted. At the sexual predator hearing, the trial court recalled that the motionin limine mentioned appellant fathering a child with Chevette Leddbetter, who was fourteen-years-old at the time the child was born. The trial court concluded that appellant's sexual encounters with Chevette and Yolanda demonstrate that "there are multiple victims."
A victim's prior sex offense is a factor supporting a sexual predator finding. R.C. 2950.09(B)(2)(b). However, in this case, the record does not contain any information indicating that appellant raped Chevette. The trial court recognized that Chevette was fourteen years old at the time she had the child fathered by appellant. However, the record fails to establish whether the child was conceived after appellant raped Chevette by forcing her to have non-consensual sex, in violation of R.C.2907.02(A)(2), or by having sex with her when she was less than thirteen years of age, in violation of R.C. 2907.02(A)(1)(b). Thus, we conclude that the trial court erred in basing its sexual predator finding on appellant's sexual encounter with Chevette.
Nonetheless, appellant was not prejudiced by the trial court's error because the trial court's sexual predator decision is supported by other sufficient evidence. As noted by the trial court, appellant repeatedly raped Yolanda for an extended period of time. Such repeated sexual abuse establishes a demonstrated pattern of abuse and invokes a factor in support of the sexual predator finding. R.C. 2950.09(B)(2)(h). As we previously noted, the commission of multiple sex offenses over a period of time can show that the defendant has a compulsion, and that he or she likely "will have a similar compulsion in the future to commit these kinds of sexual offenses." State v. Bartis (Dec. 9, 1997), Franklin App. No. 97APA05-600, unreported; see, also, State v. King (Mar. 7, 2000), Franklin App. No. 99AP-597, unreported.
Additionally, the trial court correctly concluded that appellant raping his stepdaughter is another factor in support of the sexual predator finding. See King. Appellant was placed in a position of trust with Yolanda and violated that trust by committing the sex offenses. Id.
We further recognize that appellant began raping Yolanda while he was in his forties and she was a teenager. Appellant raping a teenager is another factor supporting a sexual predator finding. State v. Pryor (July 27, 2000), Franklin App. No. 99AP-1218, unreported, citing State v.Daniels (Feb. 24, 1998), Franklin App. No. 97APA06-830, unreported; see, also, R.C. 2950.09(B)(2)(a) and (c).
Moreover, appellant's forcing Yolanda to watch him take a shower and to watch pornographic movies with him while he masturbated demonstrates appellant's proclivity to force other people to participate in his sexual gratification. We conclude that such conduct also supports a finding that appellant is a sexual predator. See R.C. 2950.09(B)(2)(j), indicating that a sexual predator determination may be based on any "additional behavioral characteristics that contribute to the offender's conduct."
Because the record sufficiently establishes appellant to be a sexual predator, we overrule appellant's nineteenth and twentieth assignments of error.
In his twenty-first assignment of error, appellant asserts that the record does not support the trial court's decision to impose consecutive sentences of imprisonment. We disagree.
According to R.C. 2953.08(G)(1)(a), the trial court's sentence is invalid if, by clear and convincing evidence, the sentence is not supported by the record. R.C. 2929.14(E)(4) governs when trial courts may impose consecutive sentences of imprisonment on an offender and states:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
In this case, appellant subjected Yolanda to repeated acts of rape. Appellant's raping Yolanda violated the familial relationship between a stepfather and stepdaughter. As noted above, Yolanda suffered through the rapes from late 1996 through the middle of 1997, and experienced the sexual abuse as a teenager while in her home. Indeed, the child twice moved out of her home to try to escape the abuse. Such egregious conduct by appellant calls for lengthy imprisonment stemming from consecutive sentences because the sentences protect the public and adequately punish the offender.
Consecutive sentences protect the public by striving to deter the criminal conduct demonstrated by appellant. Anyone desiring to mirror appellant's criminal acts does so with the understanding that it will result in a severe punishment. Additionally, as noted above, the lengthy imprisonment stemming from consecutive sentences is necessary to punish appellant. Yolanda endured being repeatedly raped while a teenager in her home. No single prison term would be sufficient to redress the harm caused to Yolanda. Additionally, ordering appellant to serve consecutive sentences holds him accountable for repeatedly raping Yolanda.
For the reasons stated above, we also conclude that consecutive sentences in this case are not disproportionate to the seriousness of appellant's conduct. In fact, the imposition of concurrent sentences in this case would amount to a multiple-offense "discount" that should not be countenanced when an offender rapes a teenage victim repeatedly.
The record also establishes that consecutive sentences are not disproportionate to the danger appellant poses to the public. Appellant's conduct in this case demonstrates his disregard for the law and others. In considering appellant's conduct in this case and in recognizing that appellant has some criminal history, we conclude that the record establishes a great likelihood of recidivism by appellant. Such danger posed by appellant necessitates a lengthy sentence stemming from consecutive sentences.
Finally, the record demonstrates that the harm caused by the multiple offenses in this case was so great that "no single prison term for any of the offenses committed as part of a single course of conduct" adequately reflects the seriousness of appellant's conduct. As we repeatedly stated above, appellant violated the familial relationship he had with his stepdaughter and subjected her to repeated acts of rape while she was a teenager in her own home. The nature of appellant's conduct demands consecutive sentences.
As such, we conclude that the record satisfies elements in R.C.2929.14(E) (4), allowing the trial court to impose consecutive sentences on appellant. We will not address whether the trial court made the statutorily required findings and explanations upon imposing the consecutive sentences because appellant has not requested us to do so. We are not required to address errors neither assigned nor argued. Toledo'sGreat Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No.III, Inc. (1986), 24 Ohio St.3d 198, 203; Franklin Cty. Dist. Bd. ofHealth v. Sturgill (Dec. 14, 1999), Franklin App. No. 99AP-362, unreported.
Accordingly, we overrule appellant's twenty-first assignment of error.
Appellant's twenty-second assignment of error relates to appellee calling appellant's daughter, Desiree Jackson, as a witness at the second trial of this case. At the second trial, Desiree admitted telling Aretha that appellant was "touching" Yolanda. However, she claimed that the "touching" statement was a lie and not based on anything Yolanda told her.
Appellant claims that it was inappropriate for appellee to call Desiree because appellee had previously questioned the witness's credibility during its closing statements at the first trial. Thus, according to appellant, the trial court was required to declare a mistrial on the basis of prosecutorial misconduct, which occurred when appellee called Desiree at the second trial after deeming her untrustworthy. Appellant asserts that appellee apparently called Desiree with the intention of tainting appellant with his daughter's false testimony. We disagree with appellant's contentions.
The test for prosecutorial misconduct is whether the prosecutor's conduct was improper and, if so, whether the conduct prejudicially affected substantial rights of the defendant. State v. Smith (2000),87 Ohio St.3d 424, 442.
In this case, appellant's claim of prosecutorial misconduct fails on several levels. First, appellant fails to establish appellee's questioning Desiree's credibility prior to calling her as a witness. Appellant makes this assertion by relying on a non-certified copy of appellee's closing statement in the first trial that was merely attached to his brief. The attachment is not part of the record, does not augment the record and may not be considered in the determination of this appeal. City of Upper Arlington v. Cook (Apr. 18, 2000), Franklin App. No. 99AP-251, unreported, citing App.R. 9, and Paulin v. Midland Mutl.Life Ins. Co. (1974), 37 Ohio St.2d 109, 112. Second, the record does not establish appellant's contention that appellee called Desiree with the intention of tainting appellant. Nowhere in the record does appellee make any suggestion to the jury that appellant persuaded Desiree to lie or that appellant's character is connected to Desiree's untrustworthiness. Rather, there are many possible strategic reasons why appellee would want to call Desiree at trial beyond appellant's speculative assertions. SeeState v. Coulter (1992), 75 Ohio App.3d 219, 230 (noting in another context that an attorney's selection of witnesses falls within the purview of trial strategy).
Thus, we conclude that the trial court committed no error in not declaring a mistrial on the basis of prosecutorial misconduct. Therefore, we overrule appellant's twenty-second assignment of error.
In summary, we overrule appellant's twenty-two assignments of error and, as such, we affirm the judgment of the trial court.
Judgment affirmed.
BRYANT, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.